THE STAMFORD STEAM BOAT COMPANY *vs.* GIBBONS.

Where a steam-boat chartered for *six months* to ply between *New-York* and *New-Brunswick*, was arrested in *New-Jersey* by process of *attachment* sued out by a creditor of the owner, who on receiving notice of the seizure of the boat refused to procure her liberation, by giving bonds or otherwise, *it was held*, that by such refusal the hirer was discharged from the contract, and from all liability for the hire of the boat for the residue of the term.

An *attachment* thus issued will be *presumed* to have issued conformably to the laws of the place where it is executed, and will protect the hirer from responsibility, the same as if the property had been taken on an *execution* against the owner.

ERROR from the superior court of the city of New-York. The defendant Gibbons chartered a steam-boat belonging to the plaintiffs, to ply between the city of New-York and New-Brunswick, in the state of New-Jersey, from 26th June 1827, until the first day of January following ; he to pay for the use of the vessel during the term the sum of $2700. Gibbons commenced running the boat between the two places on the 26th June, and continued until 14th August, when she was taken possession of at New-Brunswick by the sheriff of Middlesex, in New-Jersey, by virtue of an *attachment*, sued out by a creditor of the plaintiffs, for a demand against them for repairs done to the boat previous to her being chartered by the defendant; the process, however, purported to be issued for a debt, not of the plaintiffs, but of their *agent*. The sheriff told the master of the boat that she must remain at New-Brunswick until bonded, or until the debt for which she was attached was paid. Notice of the attachment was immediately given by the master to Gibbons, and to J. A. Davenport the *agent* of the plaintiffs, in the city of New-York. Gibbons and Davenport had an interview on the subject, in which each insisted that it was the duty or the other to give the necessary bonds to relieve the boat from the attachment, and each refused to do it. On the 17th August Gibbons paid an agent of

the plaintiffs the balance due for the hire of the boat at the rate agreed upon, up to the day she was arrested, and on the 20th August gave formal notice to Davenport, that having waited until then to learn what the plaintiffs intended to do in respect to the seizure of the boat, and not having heard from them on the subject, he should make such other arrangements as he could, consistent with his interest, and hold the plaintiffs answerable to him in damages for a breach of contract. On the 17th September, Davenport applied to the court into which the process was returned, and obtained a rule quashing the attachment, and all subsequent proceedings had thereon, and two days thereafter wrote Gibbons that acting "for whom it might concern," he had procured the attacement to be quashed ; that he advised him of what had been done, considering it his duty to give him all such information as he received on the subject, and appraised him that notwithstanding the intimation contained in his (Gibbons') letter of the 20th August, the owners of the boat would hold him responsible for the fulfilment of the terms of the charter. To which Gibbons answered, that in pursuance of his notice of the 20th August, he had made other arrangements, that the information that the boat was released availed him nothing, as her return to his employment would neither indemnify him for the loss sustained by her arrest, nor release him from engagements made in consequence of such arrest. Thus the business rested until the 2d January, 1828, when an agent of the plaintiffs took possession of the boat, at the dock in New-Brunswick, to which she had been removed by the sheriff when seized by him, and where she had remained ever since. The plaintiffs then commenced a suit in the superior court of the city of New-York, claiming to recover the balance of the $2700, and monies expended in the repairs of the boat. On the trial of the cause the above facts appeared. The presiding judge charged the jury that the defendant was entitled to a verdict, to which opinion the plaintiffs excepted. A motion was subsequently made in the superior court for a new trial, which was denied, and a formal bill of exceptions was tendered and signed. Various questions on the admission of evidence were discussed and decided during the progress of the trial, but the only ex-

ception taken to the opinions or decisions pronounced, was that taken to the opinion expressed to the jury, that the defendant was entitled to a verdict. The plaintiffs sued out a writ of error.

*S. A. Foot*, for the plaintiffs. The defendant was not excused by the arrest and detention of the vessel from the performance of his contract. A hirer who abandons the possession of property let to him upon the claim of another, is bound to shew that the claim to which he yields is valid in law. Had the defendant abandoned the boat to a *trespasser*, he would have been without excuse, and he should be held equally responsible when he submitted to mere *colorable process*; and such should be esteemed the attachment in this case. It purported on its face to issue for the debt of a third person, and not for the debt of the plaintiffs; it was not shewn that by the laws of New-Jersey such process was allowable; and the moment its legality was tested it was quashed. The court below therefore erred in giving the same effect to the attachment which at most was but mesne process, that they would have given to an excution on a judgment duly obtained. Again: if the plaintiff were bound to defend against the proceedings commenced in New-Jersey, they did all that could be required; they procured the attachment to be set aside, and gave notice of the liberation of the vessel to the defendant. The arrest and detention of the vessel being by paramount authority, under color of law, which could not be resisted, the contract was not thereby dissolved: its execution only was suspended; the parties were bound to wait until the contract could be performed, and neither could claim damages of the other. *Pothier on Maratime Contracts, by Cushing*, 53, § 100.

*J. A. Spencer*, for defendant. The hiring of the vessel belonged to that species of bailment called *locatio rei*, in which the law implies an undertaking on the part of the bailor, that he has the power to let, and that the bailee shall have the use of the thing hired during the stipulated period. The

ALBANY,
Oct. 1832.

Stamford
Steamboat Co.
v.
Gibbons.

owner is bound to defend the property in the possession of the hirer against all claims existing against himself; and all that can be required of the hirer is, that when disturbed in the possession, he shall give notice to the owner, so that he may take upon himself the defence of the property. The burden of the defence the hirer is not bound to assume, when the owner is within reach: having given notice, he may permit the suit to proceed, and if the owner neglects to do what is necessary to restore to him when disturbed the possession and enjoyment of the property, the hirer is discharged from performance of his part of the contract. The counsel compared this case to a disturbance and eviction of a lessee of land, and to suits against a grantee with covenant of warranty, and a sheriff for an escape, each of whom are relieved from the defence of suits commenced against them, on giving notice to the parties whose duty it is to defend. Here the plaintiffs were apprized of the arrest and detention of the vessel, which they might have liberated, by giving bonds for its return, or for the payment of the debt, on account of which it was taken; this the defendant was not bound to do, nor was he obliged to accept the vessel when liberated, after the lapse of time which had then occurred. 8 *Cowen*, 63.

A variety of other questions were discussed by the counsel who argued this case, but as they are not passed upon by the court for the reason assigned in the opinion delivered, they are omitted to be reported.

*By the Court*, SAVAGE, Ch. J. The counsel on each side having raised a number of points relating to the evidence, some of which were not raised in the court below, and to none of which was any exception taken. The only exception taken was to the judge's charge to the jury, which was, that upon the whole evidence, the plaintiffs had not a right to recover. Whether the act of the general assembly of Connecticut incorporating the plaintiffs was properly proved; whether the existence of the corporation was sufficiently shewn; whether the plaintiffs had power to make the contract in question; and whether it was proved as laid, are questions not arising upon this bill of exceptions.

ALBANY,
Oct. 1832.

Stamford
Steamboat Co.
v.
Gibbons.

It seems to be very well settled, that in case of a sale of a chattel for a fair price, the vendor warrants the title. If the title is subsequently claimed by another by suit at law while in the hands of the vendee, he is bound not only to give notice of such claim, but to defend that title before he can have recourse to his vendor upon the warranty. The case of lessor and lessee are not altogether analogous. The lessor conveys not the title to the lessee, but the possession for a given time. If the possession is taken from the lessee legally by virtue of a superior title, there can be no question that he is discharged from his obligation, and is also entitled to recover his damages. In case of the warranty, the suit is brought against the vendee, the person in possession. In case of the lease, the suit is a proceeding *in rem* and against the lessor, and in case of attachment or execution, the possession of the chattel is taken. Had the creditor in this case, who sued out the attachment, claimed to be the owner of the boat, he must have brought his suit against Gibbons, and Gibbons then must have defended the suit in the same manner as if he had been a vendee; but the title to the boat is not disputed. A creditor of the owner seeks to enforce the collection of a debt due from the owner. Had an execution been levied on the boat instead of an attachment, there could be no doubt that the defendant would have been discharged from his liability, and that on the ground that the possession of the boat was taken from him by paramount authority—the authority of law. An attachment is also a process known to the law, and as was said by this court in *Jenner* v. *Joliffe*, 9 Johns. R. 385, it is to be presumed that it was issued conformably to the laws of the place where it was executed, in due form of law. The case of *Edson* v. *Weston*, 7 *Cowen*, 278, decides that where property is bailed and subsequently taken from the possession of the bailee by virtue of an execution, the bailee is discharged from his contract. Had the horse in that case been taken by virtue of an attachment, I do not see that the rights of the parties would have been altered. The bailee there was merely a depositary, and answerable only for gross neglect. So, had the bailment been different, had he been a hirer of the property and agreed to pay for the use of the animal, he would have

been answerable but for ordinary care. If process of law takes the property from the bailee, he must be excused, whatever may be the species of bailment. The law is supreme, and resistance unnecessary, because improper.

I do not, however, put this case upon any species of the contract of bailment, and in the absence of authority in point, we shall be most safe in applying to it the rules of reason and common sense. The plaintiffs let their boat for a specific time ; this implies their right to do so, and guarantees to the defendant the uninterrupted use of the boat for the term. If a creditor of the plaintiffs takes the boat by process of law, this proves that they had not the right themselves, and consequently could not grant to the defendant the right to the use of the boat ; they were therefore in fault. If a trespasser had forcibly taken the boat, the defendant must have been responsible, for it wouuld not have been the fault of the plaintiffs. If A. hires a horse and gig for ten days to go a journey, and after he has started, the property is taken from him on an execution against the owner, surely the hirer is not obliged to return the horse and gig, or to pay for the use which he has not had. Does it make any difference if the process is an attachment? That equally dispossesses the hirer as an execution. Can it be contended that the hirer is bound to defend suits brought against the owner because they are commenced by attachment? This will not be pretended under circumstances where the hirer can give immediate notice to the owner. It was not the duty of the defendant in this case to defend the suit which was commenced ; there was a debt actually due, though it appears that the attachment was quashed upon its return ; for what cause does not appear. Neither can I see why it was the duty of the defendant to give bonds for the boat, either to pay the debt or to retain the boat. The owners were present by their agent, and were notified that the defendant was deprived by process of law of the use of the boat. I apprehend it was their duty to have relieved the boat as well as to defend the suit. They refused to do so, and the defendant was at liberty to consider the contract rescinded by the plaintiffs.

Judgment affirmed, with single costs.