## MONTGOMERY v. WILSON AND OTHERS.

### · Damages.

Defendants were trespassers in taking and driving away plaintiff's cattle; but the cattle were taken from defendants' possession on writs of attachment against plaintiff, and subsequently sold, and the avails thereof applied on executions against plaintiff. *Held*, that defendants were liable for damages only up to the time of the attachment, irrespective of whether the officer proceeded legally with the property after the attachment or not.

TRESPASS AND TROVER for thirteen yearling cattle. Pleas, the general issue, and justification under process. Trial by the court, June Term, 1874, PECK, J., presiding.

It appeared that on the 5th of September, 1870, the defendants, Wilson and Perrin, placed in the hands of J. Q. A. Bass, a deputy sheriff within and for the county of Orange, four lawful writs of attachment against said Montgomery, returnable before a justice of the peace; that said sheriff, with said writs in his possession, accompanied by said Wilson and Perrin, who were the attorneys for the plaintiffs in said writs (said Perrin being plaintiff in one of them), proceeded to Braintree, where Montgomery then lived, for the purpose of attaching his property on said writs; that when they arrived in the vicinity of Montgomery's farm, they met defendant Hazelton, who informed them that said thirteen cattle had then recently been taken away from Montgomery's farm; that thereupon said attorneys informed said sheriff, that if he would direct them to go and get said cattle they would go and get them, and that the sheriff then directed them accordingly; that at the time these directions were given, the sheriff and the defendants were in the highway within a few rods of the line of Montgomery's farm, but had not reached his farm, nor a point in the highway opposite thereof, and were about one hundred rods from his dwelling-house thereon; that the sheriff immediately proceeded to Montgomery's house to attach his personal property on the farm, and the attorneys proceeded to another farm of Montgomery's in Braintree, and

not finding said cattle there, proceeded to the town of Rochester, in the county of Windsor, a distance of from seven to nine miles from the place where they left the officer, and found said cattle and drove them to Braintree depot, and there procured the defendant Hazelton to drive them to the yard of Ephraim Thayer in West Randolph village the same evening, which yard was about sixteen miles from where defendants first took the cattle. Said attorneys, in taking said cattle as aforesaid, had no papers, and no authority except the directions of the sheriff as aforesaid. On the morning of the 6th of September, the sheriff, at said Randolph, attached said cattle on said four writs, but he returned that he attached them in Rochester. On the 5th of September, the sheriff did not go to Rochester, and never saw said cattle till the 6th. The officer completed his service of said writs on Montgomery in due time, and kept said cattle at Randolph by virtue of said attachment, until after judgment had been rendered in all of said suits, and until legal executions on all of said judgments were placed in his hands for collection, to wit, until the 24th of September, when he, at said Randolph, levied on said cattle, and advertised them by posting notices in Rochester, that the same would be sold at a public place in said Rochester, on the 8th of October. Said cattle were sold pursuant to the directions of the statute, provided they could be advertised and sold in the town of Rochester. The avails of said sale, $91, were applied on said executions. Said cattle were kept in Randolph from the evening of the 5th of September, until the morning of the 8th of October, when they were driven to Rochester, about 5 miles, and sold as aforesaid. They were never in the possession of the sheriff in Rochester, until he drove them there on the day of sale. Said sheriff returned on said executions, that he levied upon said cattle in the town of Rochester.

The defendants made two points : 1st, that the sheriff had a right to direct defendants Wilson and Perrin to go after and get the cattle ; 2d, that if he had not, the attachment and sale should go in mitigation of damages.

The court ruled, *pro forma*, that plaintiff was entitled to recover the value of said cattle, and assessed that value at $208,

78

and rendered judgment therefor. In the event that plaintiff was finally adjudged entitled to recover only the value of said cattle less the amount of the avails of the sale thereof applied on said executions, the court assessed the damages at $143.91, and rendered provisional judgment therefor. And in the event that the proceedings of the officer after said cattle were attached by him at Randolph as aforesaid, were held to relieve the defendants from damages thereafter accruing, then the court assessed the damages at $40, and rendered judgment therefor. To the rendition of judgment for $208, and for $143.91, defendants excepted.

*P. Perrin* and *J. J. Wilson* (*J. W. Rowell* with them), for defendants, cited *Blatch* v. *Archer*, 1 Cowp. 63 ; *Commonwealth* v. *Field*, 13 Mass. 320 ; 5 C. & P. 322 ; 8 Q. B. 1035, note ; 8 Vt. 407 ; 15 Vt. 211 ; *Yale* v. *Sanders*, 16 Vt. 243 ; *Stewart* v. *Martin*, 16 Vt. 397 ; 19 Vt. 858 ; 26 Vt. 380 ; *Collins* v. *Perkins*, 31 Vt. 624 ; *Hall* v. *Ray*, 40 Vt. 576 ; 9 Pick. 551 ; *Pierce* v. *Benjamin*, 14 Pick. 356 ; *Kaley* v. *Shedd*, 10 Met. 317.

*N. L. Boyden*, for plaintiff, cited *Collins* v. *Perkins*, 31 Vt. 624 ; *Hall* v. *Ray*, 40 Vt. 576.

The opinion of the court was delivered by

BARRETT, J. To the judgment for $40 damages, no exception was taken. This aspect of the case presented by the bill of exceptions, assumes that the taking of the cattle by the defendants at Rochester, was not, in legal effect, an attachment of them by the sheriff holding the writs against Montgomery, but that such taking was wrongful as against Montgomery. This suit is brought in that view, and on the same assumption. It follows then, that Montgomery's relation of ownership of the property was not affected by what the defendants did ; and the property when arrived at West Randolph, was his, and there, was as much subject to attachment on writs against him, as it would have been at his house in Braintree, or if it had been in his own possession at Randolph. The sheriff had lawful warrant to take that property

at Randolph by virtue of the writs in his hands, and it was not within the province or the lawful right of the defendants to hold the property against him. He exercised his official authority, and took possession of the property by virtue of those writs, and held and sold it as attaching officer, upon execution, pursuant to the attachment he had made. So far as the rights of Montgomery are concerned, the case stands the same as if at Randolph he had resumed possession of the property, not waiving the liability of defendants for the wrongful act of taking the property at Rochester and driving it to Randolph. In such case, the measure of damages would not be the value of the property, as it would have been if he had not taken it back, but the damage he sustained by what was done down to the point of his taking back the property.

The sheriff, on taking the property on the writs in his hands, as he officially might and did, then became solely responsible to the parties entitled under the attachment, for his course in respect to the property after it had been taken by him. These defendants are not chargeable for his course as officer of the law ; and so, as he is not defendant in this suit, we have no occasion to decide or consider whether he conducted lawfully or not as against the present plaintiff.

As intimated in the outset, the case is before us on the assumption that the taking of the cattle by defendants at Rochester, was not an attachment by the sheriff, and so it is not within the case for us to decide whether it was or was not an attachment by him. The question is one of sufficient practical consequence to warrant withholding an opinion upon it till it shall be involved in a case submitted for judgment.

The judgment for the two larger sums is reversed, and judgment for the smallest sum is affirmed.