### ALLEN vs. MARTIN and others.

Where a party arrested by an officer, breaks away and shuts himself up in
his house, the officer is justifiable, in the attempt to re-take him, to break
open the *outer door* of the house of such party, without making known his
business demanding admission and receiving a refusal, where the pursuit
is fresh and the party consequently aware of the object of the officer.

In an action of *trespass* against an officer who justifies under a justice's exe-
cution, evidence that the same officer *fraudulently* served the original pro-
cess is not admissible; the remedy of the party must be *direct*, either by
action for a false return, or by writ of error: he cannot *collaterally* impeach
the proceedings.

THIS was an action of trespass *quare clausum fregit,* and for
an *assault, battery* and *false imprisonment,* tried at the Warren
circuit in December, 1830, before the Hon. ESEK COWEN, one
of the circuit judges.

The plaintiff proved that the defendants, with great vio-
lence, burst open his door in the night time, that he kept
them at bay until morning, when they entered and took and
carried him away.   In defence it was proved that Martin, one
the defendants, as a constable, arrested the plaintiff on a jus-
tice's execution, and that the other defendants acted in his
aid; that the plaintiff broke away from him, entered his
house, pushed back the constable and closed the door.   A wit-
ness for the plaintiff testified that previous to the bursting
open of the door, Martin had entered the house of the plaintiff
in the evening, clenched hold of him, saying I have got you,

you damned scoundrel, and dragged him out of the house ; a
scuffle ensued, both fell to the ground, the plaintiff broke from
the constable and entered his house, and the constable went
off. It further appeared that the constable procured assist-
ance, and on the same night returned and broke open the
door. When the constable seized upon the plaintiff and
dragged him out of the house, he said nothing as to his hav-
ing an execution against the plaintiff. When he entered the
house, previous to the bursting open of the door, the out-
side door was closed, but not latched ; there was some evi-
dence, though slight, from which it might perhaps be in-
ferred that the constable had arrested the plaintiff in the
morning previous to the arrest in the evening, and that
the plaintiff had escaped from him. The plaintiff offered
to prove that the defendant Martin served the *summons*,
the first process in the suit in which the execution issu-
ed ; that he mis-read it, and informed the plaintiff that it
was returnable on the *eleventh*, when in fact it was returnable
on the *tenth* day of August ; and that in consequence of such
mis-information, the plaintiff did not attend to the suit until
the *eleventh* day of August, when he found that on the day
preceding, judgment had been rendered against him by de-
fault ; that the constable *knew* that the plaintiffs in that suit
had no legal claim or demand against the plaintiff in this suit,
and that the plaintiff was a minor ; which evidence was object-
ed to and rejected by the judge, who charged the jury, that if
the plaintiff's door was even latched at the time of the entry
for making the original arrest, the constable was not justified
in entering ; but if the door was unlatched and not fastened,
or, as seemed probable from the testimony, slightly ajar, the
constable had a right to enter to arrest the plaintiff ; and he
further instructed the jury that the constable having been
forcibly resisted and expelled from the house, it was not
necessary for him to make a formal demand of leave to re-en-
ter the house ; that the conduct of the plaintiff was equivalent
to a refusal to grant leave, and that the demand would have
been idle ; but if the jury should find that in the re-taking of
the plaintiff, unreasonable and greater force had been used
than was necessary to effectuate the object, viz. the recaption

NEW-YORK,
May, 1833.

Allen
v.
Martin.

of the plaintiff, the defendants were liable to damages. The jury found for the defendants, and the plaintiff now moves for a new trial.

*S. Stevens,* for the plaintiff. The evidence offered should have been received ; it would have shewn a judgment obtained by *fraud,* to which the constable was accessary, and if so, the judgment was void, and the execution was no protection to him. *Roberts on Fraud. Conv.* 250, *ch.* 5, § 1. 3 *Co.* 77. There was *no arrest* previous to the bursting in of the door ; what took place when the constable seized upon the plaintiff and dragged him out of his house cannot be considered an arrest in the execution of legal process, even had it been pretended to be so, which it was not, as nothing was said by the constable as to his having process against the plaintiff; it was the lawless conduct of a ruffian, who ought not to be protected in the abuse of a citizen, although at the time he happened to have process in his pocket which authorized him to arrest the party. But if it be considered an arrest, it was void, as the constable had no right to enter the house to make it ; the door was closed, whether unlatched or not is immaterial ; in the view of the law it was shut, and unless *open,* an officer has no right to enter, without first obtaining leave to do so. *Hobart,* 62 *and* 263. Nor was the constable authorized to burst open the door to make *recaption* until after a demand for admission and refusal. 5 *Co.* 92, 3. 3 *Bos. & Pul.* 230. 14 *East,* 162. The judge at the circuit mistook the facts in proceeding on the assumption that the constable was expelled from the house ; there was not such evidence.

*W. Hay, jun.* for defendants. The evidence offered was correctly rejected ; allowing that the plaintiff was a minor, the judgment was not void ; and the fraud of the constable could not affect the judgment or execution. If the officer had been guilty of malfeasance in the service of the summons, he was indictable, and the party, besides, was entitled to his personal action. In support of these positions the counsel cited *Putnam v. Mann,* 3 *Wendell,* 202, and *Beaty v. Perkins,* 6 *id.* 382. The conduct of the officer in making the original arrest was not very courteous ; allowing there had been no previous pro-

vocation, still it was a legal arrest, notwithstanding that the door was not open when the officer went to the house. A party cannot claim his house to be considered a *castle,* unless he indicates his intention of having it so considered, by presenting the necessary defences against its being stormed. Having arrested the plaintiff, the subsequent conduct of the officer was justifiable ; the conduct of the plaintiff was equivalent to a refusal of permission to the officer to enter the house for the purpose of a recaption, and superseded the necessity of a formal demand of admission. 4 *Wendell,* 639. 3 *id.* 48. 1 *Cowen,* 75. 11 *Johns. R.* 1.

*By the Court,* NELSON, J. The case of *Putnam* v. *Mann,* 3 *Wendell,* 202, disposes of the first question. There can be no doubt the judgment before the justice cannot be impeached in this collateral way, and that so far as its validity is concerned, the return of the service of the summons is conclusive, except on a direct proceeding to reverse the judgment for the irregularity. The party injured has an ample remedy, either by action for a false return, or by writ of error.

The testimony was sufficient to prove a previous arrest and escape before the defendants broke into the plaintiff's dwelling house for the purpose of retaking him on the execution. The language of the officer was highly discreditable to his manners and morals, but his acts were, in judgment of law, a legal arrest, and the defendant, (now plaintiff,) ought to have submitted. *Jenner* v. *Sparks,* 1 *Salk.* 78. *Bul. N. P.* 62. *Hornes* v. *Battyn, Foster's Cr. L.* 320, § 22. In the pursuit to retake the defendant, the officer had an unquestionable right to break open the *outer door* of the house, after making known his business, demanding admission, and a refusal. *Foster's Cr. Law,* 320, § 22. 1 *Salk.* 78. There was no proof of demand and refusal in this case, but under the circumstances, such proof was not necessary. After the officer had been thrust out of the plaintiff's house, and the door shut upon him, it would have been a senseless ceremony for him to have turned round, made known his business, and demanded admission. The plaintiff's conduct superseded the use and object of these steps. It was said, upon the argument, that the judge erred

NEW-YORK, in assuming that the plaintiff forcibly turned the officer out of
May, 1833. the house, as the fact was otherwise. I think the testimony
Mohawk Bank warranted this inference, notwithstanding the evidence of the
v. sister. But this is not very material, for whether the fact was
Broderick. so or not, that the plaintiff was fully advised of the purposes of
the officer when he returned with the *posse*, cannot be doubt-
ed. Indeed the case discloses, that in the course of the day
preceding the first arrest, a difficulty had occurred between the
parties in reference to this execution and the arrest of the
plaintiff upon it, and which no doubt gave the harsh character,
in some respects, to the subsequent proceedings. The ver-
dict I think right, both in law and fact.

New trial denied.