WHITAKER & MOORE *vs.* MERRILL and others.

A legal proceeding, regular on its face, instituted by one party against another in violation of good faith, or contrary to his express agreement, and with a fraudulent intent, cannot be treated as a nullity, where the question arises collaterally.  On the contrary, the courts are bound to treat it as a legal and valid proceeding, until it is set aside on a direct application for that purpose.

A debtor, for the purpose of effecting a compromise with his creditors, dispatched an agent to negotiate with them, entrusting him, for that purpose, with certain promissory notes made by a third person and then held by the debtor.  The agent thereupon called upon the defendants, who were among the largest creditors, and they agreed to compromise their claim at twenty-five cents on the dollar, and signed a paper to that effect.  They then proposed to have W., a person in their employ, take the notes and go to the other creditors, and get them, also, to sign the compromise.  Having got possession of the notes in this manner, they refused to restore them ; commenced a suit against their debtor, and obtained an attachment therein, by virtue of which the notes were seized by the sheriff, in the hands of W.  The plaintiffs in that suit subsequently recovered a judgment, and by virtue of the attachment and judgment they claimed the right to retain the notes.

*Held,* in an action by the assignees of the debtor, to recover of the defendants for the conversion of the notes, that the attachment, and the seizure of the notes thereon, constituted a full and complete defense ; and that the only remedy of the plaintiffs was by an action for the alleged fraud and breach of faith.

A verdict subject to the opinion of the court can be ordered only where the trial presents *questions of law,* alone.

In order to justify such a disposition of the case, at the circuit, the facts must all be ageeed upon, or found by the jury, or established by *conclusive* evidence..

If there is no question of fact, in the case, such a verdict may be ordered ;

Whitaker v. Merrill.

but if there be one, however strong the evidence may be, upon it, provided, from the nature of the case evidence would be admissible to rebut or overcome it, the question should be sumbitted to the jury to pass upon, with proper instructions from the court.

MOTION by the plaintiffs for judgment on a verdict taken, subject to the opinion of the supreme court. Also, motion by the defendants for judgment in their favor, on the case.

The action was brought for the conversion by the defendants of three negotiable promissory notes, amounting in the aggregate to $2101.42 of principal, made by Daniel Tompkins, and payable to Clinton Evans or bearer, the assignor of the plaintiffs. The notes bore date July 17th, 1854; one being for $814.63 and interest, payable nine months from date; one for $814.63 and interest, payable twelve months from date; and the other for $472.16 and interest, payable in eighteen months. The evidence on the trial, which took place at the Steuben circuit in May, 1857, tended to show that Evans, the payee of the notes, in July, 1854, was a resident of the village of Savona in the county of Steuben, and was the owner and holder of the three notes mentioned, made by said Daniel Tompkins. That Evans was indebted to one Franklin Converse of Troy, and to the plaintiffs and divers other persons of the city of New York. That in the latter part of said month of July, Converse called on Evans, at Savona, who placed the notes against Tompkins in his hands to go to New York and call on Evans' creditors there with a view of effecting a compromise with them of their demands against Evans. Converse was a witness on the trial, and testified among other things as follows: " I went to New York from Savona; called on Evans' creditors in New York. The first creditors I called on were the defendants Merrill, Townsend & Boynton; as they were one of the largest creditors, I called on them first, showed them the notes of Tompkins as the available means of Evans, and stated my object to be to get a compromise of his debts. I saw there Townsend and Boynton. They expressed themselves gratified, and said they were very

glad of· it; said they were ready to sign a compromise at twenty-five cents on a dollar. They proposed to draw·up the paper of compromise and sign it. They drew up such a paper and signed it. I took the paper and went to other creditors; took with me the notes. After seeing some of the other creditors I came back to Merrill, Townsend & Boynton. They proposed to have Mr. Wright, a man in their employ, take the notes and go to the creditors and get them to sign. I agreed to it, and handed over the notes to Wright for that purpose in their store, in their presence and at their request. I went out, went to dinner, and after dinner returned to their store and inquired of them if Mr. Wright had returned from seeing the creditors. They said he had not. I called once or twice afterwards, and received the same answer, and began to suspect that things were not ·all right. I should say I went there half a dozen times to inquire after Wright. I asked each time I called, if the gentleman with the paper and the notes had returned yet, and each time they replied he had not. Finally they told me frankly that they had not intended he should see the creditors when the papers were placed in his hands, and that he had not been to see them. I then demanded the notes. They said they should hold them, and try and get their pay of Evans. I saw there was no use of staying any longer, and I left. They did not give up the notes."

There was nothing in the case to vary this evidence of Converse, but on the contrary it was fully corroborated by other evidence. On the 8th day of August, 1854, and after the transaction respecting the notes between the witness Converse and the defendants in the city of New York, as detailed by the witness, Evans made a general assignment of his property, including the notes in question, to the plaintiffs, in trust, for the payment of his debts. The plaintiffs further proved that after the assignment by Evans to them, they caused a demand to be made in their name, of the defendants, of the notes in question, and that the defendants refused to deliver them up. It appeared in evidence that on the 3d day of August, 1854,

the defendants commenced an action by summons, against the said Clinton Evans and one W. W. Smith, which summons was personally served on Evans on the said 3d of August. That judgment was obtained in that action in favor of the said Merrill, Townsend & Boynton, against said Evans and Smith, on the 29th day of August, 1854, for $832.96 damages, and $16.25 costs. That on the same 3d day of August, Townsend, one of these defendants, made an affidavit in the action against Evans and Smith, and obtained an attachment from a justice of this court, against the property of Evans, dated the same day, directed to the sheriff of the city and county of New York, which was delivered to said sheriff, and by virtue of which the sheriff levied upon and seized the notes in question, in the hands of the said Wright, on the same day.

The justice, before whom this action was tried, directed a verdict in favor of the plaintiffs therein, against the defendants, for $2520.66, subject to the opinion of the supreme court at general term.

There was other evidence given at the trial upon questions not now considered or decided.

*William Irvine,* for the plaintiffs.

*George T. Spencer,* for the defendants.

*By the Court,* WELLES, J. The view I take of this case renders it unnecessary to consider any of the questions presented and discussed upon the argument, excepting the effect of the attachment issued against the property of Clinton Evans, in the action commenced by the defendants against Evans and Smith, and the seizure of the notes thereon. The attachment was issued on the 3d day of August, 1854, and, as appears by the sheriff's return, the notes in question were levied upon by virtue of it the same day. The case does not show at what time the witness Converse demanded the notes of the defendants, whether before or after they were levied

upon by the sheriff; nor is it very important, in this case, whether it was before or after, as it is not denied that at the time of the levy they were the property of Evans.

They were subject to be attached by his creditors, as his property, notwithstanding the demand had been previously made. Assuming that there had been a conversion of the notes by the defendants, so as to render them *prima facie* liable to Evans, it did not transfer the title to them from Evans to the defendants. They still belonged to Evans, and could have been replevied by him from a person who had unlawfully taken or detained them. If the defendants had returned the notes to Evans or his assignees, or offered to return them to the person or persons entitled to them, no action could be sustained which should have been afterwards commenced, for a previous refusal to deliver them. In such action the plaintiff would not be entitled to recover even nominal damages, for the reason that the notes were not due, and consequently no legal damages would have been sustained.

The levy by the sheriff, by virtue of the attachment, was, in my opinion, equivalent, so far as the liability of the defendants in this action is concerned, to a return of the notes to Evans. Such would clearly be the effect, if the attaching creditors had not been these defendants, and they had not been guilty of fraudulently acquiring the possession of the notes, so as to enable the sheriff to take them by virtue of the attachment.

The question then is, are the defendants estopped from setting up the attachment and levy as a defense, by the deception practiced by them upon Converse, the agent of Evans, by which Converse was induced to deliver the notes to Wright, the clerk and agent of the defendants. There is nothing in the case impairing the legal validity of the attachment. If the notes had remained in the hands of Converse, they would have been liable to be taken by virtue of the attachment, and so, if they had been returned to Evans. It was the duty of the sheriff to take them, in whose hands soever he could find them.

Whitaker *v.* Merrill.

Unless, therefore, the attachment can be in some way effectually assailed, I am unable to perceive why it was not a full and complete defense to this action.   Can it, in truth, be alleged that after the defendants had undertaken to negotiate the compromise with the creditors of Evans, they were not at liberty to commence their action, and obtain the attachment against his property, and that the proceedings were, in consequence of the bad faith of the defendants, utterly null and void? The question must either be answered in the affirmative, or the attachment and levy constitute a perfect defense.   If the attachment was void, on account of the bad faith of the defendants, the commencement of the action in which it was issued, and the judgment rendered therein, were also void, for, the same reason.   The one was as really a breach of faith as the other.   But no one will claim, I apprehend, that the judgment was void.   We are not considering whether the court, on application by Evans, would have set aside the attachment. The question is, whether it can be attacked in this collateral way, and whether the court should now regard it as a nullity. In my opinion, we are not at liberty so to regard it; but, on the contrary, we are bound to treat it as a legal and valid proceeding, until set aside on a direct application for that purpose.

We have not been referred to any adjudged case, holding that a legal proceeding, regular on its face, instituted by a party against another, in violation of good faith, or contrary to his express agreement, and with a fraudulent intent, can be treated as a nullity, where the question arises collaterally, as in the present case.   But there are cases strongly tending to uphold the contrary view, and to show that the remedy of the party aggrieved, if he have any, is by an action for the wrong complained of.   *Putnam* v. *Man,* (3 *Wend.* 202,) was an action of trespass and false imprisonment, in arresting the plaintiff on an execution issued by a justice of the peace, in a suit in favor of the defendant against the plaintiff.   In that case, Mann, the plaintiff before the justice, was a constable,

and procured the summons against Putnam, and falsely and fraudulently returned it to the justice, as having been personally served on Putnam, when, in fact, it had not been served on him in any manner, and Putnam had no knowledge of its existence. On the return of the summons, judgment was rendered by the justice in favor of Mann against Putnam, and in the absence of the latter. Mann afterwards procured an execution on the judgment thus obtained, upon which Putnam was arrested, and detained in custody; which was the imprisonment complained of. The plaintiff Putnam obtained a verdict at the circuit, subject to the opinion of the supreme court. The court, upon a case showing the above facts, gave judgment for the defendant; holding that the judgment before the justice protected as well the party as the justice, and the officer who was instrumental in enforcing it. That the plaintiff Putnam could not traverse the truth of the return to the summons by plea in abatement or otherwise; but that, if it was false, his remedy was by an action against the constable for a false return. That, as the justice had jurisdiction, and the proceedings were regular on their face, trespass would not lie.

The cases of *Allen* v. *Martin*, (10 *Wend.* 300,) and *Beaty* v. *Perkins*, (6 *id.* 382,) are to the same effect.

There should be a new trial for the error of the judge in directing a verdict for the plaintiff, with costs to abide the event.

The verdict, I am aware, was directed to be subject to the opinion of the court. But that could not be done in such a case as this. The only authority for ordering a verdict, subject to the opinion of the court, is section 265 of the code. By that section, where the trial presents *only questions of law*, the judge may direct a verdict, subject to the opinion of the court. This case is not one of that description.

In order to justify such a disposition of the case at the circuit, the facts should all be agreed upon, or found by the jury, or established by *conclusive* evidence. If there is no

*question* of fact in the case, such a verdict may be ordered; but if there be one, however strong the evidence may be upon it, provided, from the nature of the case, evidence would be admissable to rebut or overcome it, the question should be submitted to the jury to pass upon, with proper instructions from the court. All we can do, therefore, in the present case, is to order a new trial.

[MONROE GENERAL TERM, September 6, 1858. *Welles, Smith* and *Johnson,* Justices.]