# Wheeling.

## BOWYER v. KNAPP & MARTIN.

### Decided May 10, 1879.

1. There is a manifest distinction between process emanating from the court or its officer, directed to the sheriff, and a notice to take depositions from one party in a suit directed to the other, and which the statute makes it the duty of the sheriff to serve.

2. An exception is endorsed upon depositions as follows: "The defendants except to the within depositions, because they are *noticed* to take depositions in a suit pending in the circuit court of *Fayette* county, and have not received notice to take proof in the suit pending in *Greenbrier* county," the latter county being the one in which the suit was pending, in which the depositions were filed. The notice returned by the sheriff was proper, and showed that the depositions were to be taken in a suit pending in *Greenbrier* county. Upon the hearing of the exception, one of the defendants proved the notice served on him by the sheriff, which notice was a copy of the original, except that it showed that the depositions were to be taken in a case pending in the circuit court of *Fayette* county; and the defendant further testified that he received no other notice of the taking of said depositions. The court below suppressed the depositions. HELD:

> That a sheriff's return upon a notice to take depositions is *prima facie* evidence of its truth, but that in the case in which such notice was returned so served, such return was properly contradicted by written and parol evidence.

3. Notices to take depositions should indicate to the adverse party with reasonable certainty when, where and in what suit the depositions are to be taken.

4. If the notice served upon the party is upon its face calculated to mislead him, it is insufficient; but if it is not so calculated to mislead him, it will be sufficient, although it is not a literal copy of the notice returned with the depositions, which is confessedly good.

5.  Where a suit is brought on a joint and several bond against two defendants, and a proper notice to take depositions is served on one of the defendants, and not on the other, while the depositions should be suppressed as to the one not served, it is error to suppress them as to the defendant who was duly served.

6.  It is not error to refuse to admit evidence, when the matter to which it relates is not involved in the issue.

7.  Whether a party will be permitted to introduce further evidence after the evidence of the adverse party has been heard, is a matter within the discretion of the court trying the case; and its exercise will rarely, if ever, be controlled by an Appellate Court. Clearly he is entitled to introduce evidence to rebut that of the other party.

8.  Where there is an express agreement between the creditor and a partnership or joint debtor, whereby the creditor agrees to take, and does take the individual note or obligation of the partner, or joint debtor, in discharge of the partnership or joint debt, such agreement is founded upon a valid consideration, and will have the effect to discharge the partnership or joint debt.

9.  Such an agreement, to be binding, must of course be free from fraud.

10.  Whether such an agreement has been made is a question of fact for the jury to determine.

11.  Such an agreement would be equally binding, if it were an agreement to take the individual obligations or notes of each partner or joint debtor, each for his portion of the joint or partnership debt, and would release the individuals from the joint or partnership debt.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Greenbrier, rendered on the 20th day of April, 1875, in an action of debt in said court then pending, wherein Wm. Bowyer was plaintiff and Gamaliel Knapp and Obadiah C. Martin were defendants, allowed upon the petition of said Bowyer.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

JOHNSON, JUDGE, furnishes the following statement of the case:

This is an action of debt, brought in the circuit court of Greenbrier county, on a joint and several bond of the

defendants, Knapp and Martin, which bond is in the

words and figures following :

"$1,650.00.

"Twelve months after date, we, or either of us, promise and bind ourselves, our heirs, executors and assigns to pay unto William Bowyer the full and just sum of $1,650.00, of current money of Virginia. As witness our hands and seals, this the 17th day of March, 1873.

"GAMALIEL KNAPP, [SEAL]
"O. C. MARTIN. [SEAL]"

The suit was brought on the 20th day of April, 1875. The defendants appeared on the 5th day of November, 1875, and pleaded payment, and the following special plea :

"These defendants for further plea in this behalf say, that on the 13th day of April, 1875, by and upon an agreement made with said plaintiff, the defendant Martin, executed his several note to the plaintiff for $825.00, being the one-half of the bond sued upon. And on the same day the defendant, Knapp, executed his several note to the plaintiff for $825.00, being the other half and residue of the bond in the declaration mentioned ; that said plaintiff then and there, to-wit : On the 13th day of April, 1875, at Fayette county, West Virginia, accepted and received, and now holds, the said two notes of $825.00 each, for and in lieu of, and in full satisfaction of, the bond here sued upon, and this defendants are ready to verify, &c."

To this plea the plaintiff filed four special replications, to the following effect, to which the defendants rejoined generally, and issue was joinded :

1st. That defendants came to the plaintiff, an aged and infirm man, and represented to him that his attorney, J. W. Davis, who were about to bring this suit, was insolvent, and had conveyed all his estate to his wife, and that if said attorney were permitted to collect the money, the plaintiff would never get it ; when in truth and fact the said Davis was not insolvent, and had not conveyed

his estate to his wife ; and that by these false and fraudulent representations the plaintiff was induced to enter into the agreement in the plea mentioned, &c.

2d. That the plaintiff had placed the bond in the hands of J. W. Davis, an attorney-at-law, for collection, and the defendants afterwards told the plaintiff, an aged and feeble man, that his attorney was insolvent, and if he were permitted to collect the money, plaintiff would never get it; that they would renew the bond and give such bonds as would bind their whole estates; that such representations were false and fraudulent, and by them plaintiff' was induced to take the separate note of each defendant as in the plea set forth ; that as soon as he discovered the fraud he tendered the said two notes to the attorney of the defendants, who refused to receive them, and they are tendered in court, and he says that the said agreement was procured by fraud, &c.

3d. That prior to the 13th of April, 1875, plaintiff had placed said bond in the hands of an attorney for collection, and the defendants had been advised that said bond had been so placed, and on the 13th of April, 1875, the plaintiff being old, his sight dim, his hands tremulous, his will and his mental powers generally impaired, and the defendants being aware of plaintiff's mental and physical infirmities, on the day last aforesaid urgently proposed to plaintiff to permit them to take up the bond sued upon by the execution of separate bonds by each of the defendants in amounts sufficient to aggregate the amount due upon the bond sued upon, and the plaintiff consented thereto, and the defendant, Knapp, proposed to write said bonds and procured pen, ink and paper for the purpose, and prepared two writings, one of which the said Knapp and the other, the defendant, Martin, signed, and the defendants presented these two writings as for their separate bonds to the plaintiff, and as aggregating the amount due upon the bond sued upon. And the plaintiff avers that said two writings were not the bonds, but the notes of the defendants, and that they did not amount to

the sum due upon the bond sued upon, but were less by a hundred dollars; that at the time said writings were handed to the plaintiff, the defendants well knew that they were notes, not bonds, and that they did not amount to the sum due upon the bond sued upon, and thus,fraudulently concealed these facts from the plaintiff, and therefore said agreement was procured by fraud, &c.

The 4th is similar to the 3d.

On the 2d day of June, 1876, the case was tried before a jury; and the jury .found for the defendants. The plaintiff moved the .court to set aside the verdict and grant him a new trial, on the ground that the verdict was contrary to the law and the evidence, which motion the court overruled, and gave judgment for the defend-· ants.

Two bills of exceptions were signed by the Court.

The first was to the judgment of the court in suppressing certain depositions taken by the plaintiff. The notice was to take depositions in "a suit at law now pending in the circuit court of *Fayette* county, where I am plaintiff and ———————— are defendants." The exception endorsed by the counsel for defendants was on the ground that the notice was to take depositions in a case in *Fayette* county, and they had received no notice to take depositions in a suit pending in Greenbrier county. The bill of exceptions shows that the said O. C. Martin, defendant, was sworn, and told to look at the notice and say whether he received any other notice from the plaintiff to take depositions. The plaintiff objected to the question as incompetent and irrelevant, but the court overruled the objection, and the witness answered: "I received this notice from the sheriff; I never received any other notice from the sheriff, or the plaintiff, William Bowyer, to take depositions." The answer was objected to, and objection overruled; and the plaintiff excepted. On cross-examination the witness proved that he had no suit with William Bowyer except this one, and that when he received the notice he took it to his

36

*Margin case caption:* 1879 Special Term. Bowyer v. Knapp & Miller.

counsel, who advised him to pay no attention to it. The court suppressed the depositions.

The other bill of exceptions sets out all the evidence admitted to the jury. It shows that on the 2d day of March, 1874, the defendants paid the plaintiff $150.00, interest in advance for one year from the 17th day of March, 1874, to the 17th day of March, 1875, and exhibits the receipt of the plaintiff therefor; that on the evening of the 12th of April, 1875, the witness, Knapp, and his co-defendant, Martin, went to plaintiff's residence and proposed giving him their individual obligations for $825.00 each, in lieu of the bond in suit; that the proposition made by defendant was talked over by them and the plaintiff on the evening and night of the 12th of April, 1875, but that nothing definite was concluded until the next morning; that on the next morning the plaintiff agreed to accept their proposition; that Mary J. Bowyer, the daughter of the plaintiff, said she did not think the plaintiff could fix up the matter, and thereupon plaintiff asked defendant Knapp, if he could draw up the necessary papers, and being answered by him affirmatively, the plaintiff got the pen, ink and paper, and he and the plaintiff went into another room, and he prepared the notes; that the signature to each of said notes is in the handwriting of the defendants respectively. Said notes were read to the jury. They are alike except the signatures. The one given by Knapp is as follows:

"Twenty-four months after date, I promise and bind myself, my heirs and assigns, to pay William Bowyer the just sum of $825.00, bearing interest from date, interest to be paid yearly, this April 13, 1875.

"Given under my hand,

"GAMALIEL KNAPP."

The witness further continued: That said notes were delivered by defendants, and he accepted them in lieu of the bond; that plaintiff gave defendants a receipt against the bond. The receipt is as follows:

"Received of G. Knapp and O. C. Martin payment in

full for a note or bond, which calls for $1,650.00, this April 12, 1875.

"WM. BOWYER."

That plaintiff at the same time gave defendants an order on his attorney, directing him to surrender the bond in suit to them; that defendants met with one Harvey Kincaid on the evening of April 12, 1875, at the residence of the plaintiff; that Mrs. Mary J. Bowyer and George Bowyer, and several other persons were also there; that all the persons mentioned stayed all night; that on their arrival at the house the defendant, Martin, had a little brandy in a small flask, of which all hands, including the plaintiff, partook, that plaintiff took only a very small drink, and that no one was the least under the influence of the brandy except the witness himself; that none of them had any liquor the next morning. Upon cross-examination he said that defendants paid the plaintiff at that time no money or other property; but that the bond sued on was surrendered by plaintiff upon the execution of the two notes; that the receipt was executed on the 13th, but dated the 12th, at the instance of the plaintiff, who said there might be some danger in dating the receipt against the bond and the notes in lieu of it on the same day. Witness said he was there, and was on the 17th day of March, 1873, as well as on the 12th and 13th of April, 1875, insolvent, and that the plaintiff was well acquainted with his pecuniary condition and circumstances at the time of these transactions between them; that he had known the plaintiff for a number of years, and saw nothing wrong with his mind on the 12th and 13th days of April, 1875, and that plaintiff was as competent to transact business on that day as he had been since witness had known him. The witness proved also two accounts of set-off, one for $10.25 and the other for $5.00, the one due Martin and the other Knapp.

The record shows that the testimony of Martin was similar to that of defendant Knapp.

The defendants then offered the deposition of Harvey

Kincaid, to which the plaintiff objected. Upon what ground the objection was made is not stated in the record. The objection was overruled. The deposition is in substance as follows: That he was at the house of plaintiff on the 12th and 13th of April, 1875, and that he considered the old gentleman capable of transacting business: that the plaintiff said: "that the debt would be in Greenbrier, that he would have no taxes to pay on it." He said also that he was not needing the money; he said: "the parties might have the money his lifetime by paying the interest on the same." To the reading of said deposition the plaintiff excepted.

The defendants having rested, J. W. Davis was introduced by plaintiff. He said he was the plaintiff's attorney; that he had the bond sued on prior to 12th and 13th of April, 1875; that the first time he saw his client after the 13th of April, 1875, his client gave him the two notes of $825.00 each; and that the first time he saw Knapp and Martin thereafter, he tendered the notes to them, and that they were then there subject to their control.

J. Mays, the clerk of the court, was then introduced, and testified that he knew J. W. Davis, plaintiff's attorney; that in his dealings with his clients said attorney was prompt and punctual. The plaintiff's attorney then asked the witness to state, what was the pecuniary responsibility of said Davis, and defendants objected, and the court sustained the objection. Brown, another witness, testified that in the Spring of 1875, he was at the house of defendant, Martin, who told him he had been to Fayette county to see Bowyer; that he asked him how he came out, and he said very well, that he had made a thousand dollars by the trip; upon witness desiring to know how that was, Martin said: "I have saved a thousand dollars and that is as good as made." He further said to witness: "You have heard a great deal of talk about my being bound with Knapp to Bowyer for a great sum, but I am now only bound for my

part of it; we have taken up that bond and given our separate notes in place of it." Mary J. Bowyer, a daughter of William Bowyer, testified that Harvey Kincaid took her father out and talked to him and that Knapp afterwards took him out and conversed with him; and that Martin stepped up to them on the porch, that all three talked together; she could not hear the conversation; saw them have liquor; they gave her father a drink; and she saw him drink it. That was on the evening of the 12th of April, 1875; on the next morning Knapp told her father that they wanted to give new notes; and witness told Knapp that her father was not capable of doing business; Knapp wanted the business fixed up; her father asked him if he could do the writing and he said he could; he took the pen, ink and paper and went into the kitchen to write new notes; Martin told her to go with them and see that it was done right; she said she did not know enough about business to know when it was done right. He wrote the notes and read them to witness, and said that bound everything. Knapp said if Davis ever got hold of the money her father would never get a dollar of it. She saw them sign the notes; then Knapp wrote a receipt, or said it was a receipt, and she supposed it was, and she saw her father sign it. She believed what Knapp said about Davis. It does not appear whether Knapp made the representation about Davis to William Bowyer, or whether he was influenced in any way by it. Witness said her father was seventy-eight years old, that his memory had failed, and that he was easily persuaded to do anything; and that he was not at the time of the transaction competent to do business.

There is much conflict in the testimony in regard to the soundness of the plaintiff's mind at the time the new notes were given.

The plaintiff offered to give in evidence a deed executed by the defendant, Martin and wife, to Charles A. Lowry, executed on the 12th day of February, 1875, for

two tracts of land; the consideration named in the deed is one dollar; but in the deed is a provision that fifteen hundred dollars, which is therein said to be one-third of the value of the land and called the wife's dower interest, was to be paid to the wife of said Martin by the grantee, and a lien retained in the deed therefor. To the introduction of said deed in evidence the defendants objected, and the court sustained the objection and refused to allow the deed to be read in evidence, and the plaintiff excepted.

The depositions of Newman Kincaid, William G. Flanagan and William Richards and Ballard Conaway were offered by defendants, as rebutting testimony, to the reading of which the plaintiff objected. The objection was overruled, and the depositions read; and the plaintiff excepted.

These depositions all relate to the mental condition of the plaintiff. The last witness said he had talked with plaintiff about the notes; that witness had tried to trade plaintiff a tract òf land, at its assessed value, for the notes, and that plaintiff refused to make the trade; that plaintiff upon another occasion told witness, he expected to lose one of the notes.

The above gives the substance of the testimony, except as to the mental condition of the plaintiff.

The plaintiff asked the court to instruct the jury as follows:

" 1st. If the jury believe from the evidence that the bond sued upon was on the 13th day of April, 1875, in the hands of the plaintiff, or his attorney, that the two notes, $—— each, one signed by the defendant, Knapp, and the other by defendant, Martin, and read to the jury, do not constitute payment of the bond sued on.

" 2d. That although the plaintiff signed the receipt dated the 12th day of April, 1875, if the jury believe from the evidence that there was no consideration for said receipt, the two notes of $825.00 each, signed one

by Knapp, and one by Martin, then that said receipt is no bar to this action."

The court refused to give either of said instructions; and the plaintiff excepted.

The court instructed the jury as follows:

"That if the jury believe from the evidence that there was an agreement made between the plaintiff on the one part, and the defendants on the other, whereby the plaintiff was to surrender to the defendants the $1,650.00 bond held by him against them, and to take in lieu of the bond the individual notes of the defendants for $825.00 each, and that the defendants had already paid the plaintiff $150.00 on the bond, and taken his receipt for the same, and that in pursuance of such agreement, the defendants did execute their individnal notes for $825.00 each and deliver the same to the plaintiff; and that the plaintiff accepted the notes and the $150.00 in satisfaction of the bond, and receipted against it in full, and at the same time gave the defendants an order to his attorney instructing him to surrender the bond to the defendants, they must find for the defendants, unless they also believe that such agreement was procured through the fraud of the defendants, or that it was procured by taking an undue or fraudulent advantage of the plaintiff's mental infirmity, if they believe any such existed."

The bill of exceptions further shows, that in arguing the case the attorney for the defendants contended that the plaintiff was a shrewd business man, and that if he could only read in evidence to the jury a deposition given by the plaintiff, the jury would be convinced that "the plaintiff was the smartest man on his side of the question," but that the deposition with others taken by the plaintiff had been rejected by the court, and he was sorry he could not read it " to prove the soundness in mind and memory of the plaintiff." Whereupon the attorney for the plaintiff said: "Read it! read it! I wish you would read it." The attorney for defendants then

said: "Well, I will do so for the purpose of showing that your client is a man of sound mind and memory." And the attorney did then read the deposition; but it is not made any part of the bill of exceptions. The attorney for defendants also read some propositions of law from a paper, to the reading of which the attorney of the plaintiff objected; and the court stopped the attorney for defendants, and said that it had not given said paper as instructions to the jury, and repeated the instructions it had before given.

To the judgment of the court upon the verdict of the jury the plaintiff obtained a writ of error and *supersedeas·*

*J. W. Davis,* for plaintiff in error, cited the following authorities:

2 Rob. (old) Pr. 14, *Id.* 228, 290; 5 Dana 182; 7 B. Mon. 195; 2 Litt. 118; Whart. L. Dict. "Fraud;" 11 Johns, 16; 5 East 230; Stark. Ev. 17 n. A 4; Watts 126; 4 Whart. 249; *Id.* 138; 1 Dev. & Bat. 565; 3 Bibb 230; 4 Dana 205; 8 Gratt. 6; 2 J. J. Mar. 400; 3 J. J. Mar. 393; 1 Litt. 17; 3 Litt. 467; 3 Mon. 52; 4 Mon. 399; 6 Rand. 242; 1 Stark. Ev. 430; *Id.* 531; *Id.* 424, 425; 1 Greenl. Ev. ch. 3, §74; 7 J. J. Mar. 237; 1 Rob. (old) Pr. 345; 1 Leigh 483; 3 Munf. 373; 1 Rand. 461; 3 Rand. 106; 1 Call 215; 2 Leigh 321; 6 Munf. 323; 2 Munf. 254; 4 Leigh 3.

No appearance for defendants in error.

JOHNSON, JUDGE, delivered the opinion of the Court:

It is assigned as error that the court suppressed the depositions of Mary J. Bowyer and others, taken at Fayetteville, in Fayette county, on the 30th of September, 1875, pursuant to a notice served on defendant, Martin, to take depositions "in a suit at law pending in the circuit court of Fayette county," when the suit, in which the depositions were taken, was pending in the circuit court of Greenbrier county.

The bill of exceptions shows, that on the 30th day of October, 1875, upon the calling of the case, the defendants endorsed an exception on the depositions of Mary J. Bowyer and others, which exception is as follows: "The defendants excepted, to the within depositions, because they were *noticed* to take depositions in a case pending in the circuit court of Fayette county, and have not received notice to take proofs in the suit pending in Greenbrier county." The said exception was heard by the court; and upon the hearing, the plaintiff read the notice and return of the sheriff, which notice is in the record and shows that it was to take the depositions of witnesses in a suit pending in Greenbrier county ; and said notice is in all respects correct; and the return of the sheriff of Greenbrier county endorsed thereon shows, that it was duly served upon the defendants.

Here the plaintiff rested; and the defendant O. C. Martin, being sworn in his own behalf, was by counsel for defendants asked to "look at the paper now shown you, and tell whether you received that notice and whether you received any other notice from the plaintiff William Bowyer to take depositions " The last mentioned notice is in the record and is a copy of the notice above referred to returned by the sheriff, except that it has Fayette county as the county in which the suit was pending, instead of Greenbrier. The plaintiff objected to the question as irrelevant and incompetent ; and his objection was overruled, and he excepted, and the witness answered: "I received this notice from the sheriff, I never received any other notice, from the sheriff or from plaintiff, William Bowyer, to take depositions." The answer was objected to and objection overruled by the court, and the plaintiff excepted, and the notice referred to by Martin was proved by him and read ; and the plaintiff excepted. On cross-examination the witness, Martin, proved that he had no suit with William Bowyer, except this one, and that when he got the notice proved by him, he took it to A. C. Snyder, his counsel in this case and

37

showed it to him, and that his counsel advised him to pay no attention to it. ·The depositions are referred to in the bill of exceptions, which show, that there was no appearance for defendants when they were taken.

Upon this state of facts the court suppressed the depositions, and the plaintiff again excepted.

The first question presented by this bill of exceptions is : Could the return of the sheriff be contradicted as was done in this case ? It is well settled, that the return of a sheriff to the process, upon which a *foreign* judgment has been rendered, is only *prima facie* evidence of the truth thereof; and the same may be contradicted by parol evidence. *Knowles* v. *Gas Light Co.*, 19 Wall. 58 ; *Hill* v. *Mendenhall*, 21 Wall. 453 ; *Carleton* v. *Bickford*, 13 Gray 591 ; *McDermot* v. *Clary*, 107 Mass. 501 ; *Ferguson* v. *Crawford*, 70 N. Y. 253 ; *Martin* v. *Gray*, 19 Kan. 558 ; *Pollard* v. *Baldwin*, 22 Iowa. 329 ; *Aldrich* v. *Kenny*, 4 Conn. 379.

It has been held, but against the great current of decisions, that the same rule applies to domestic judgments. *Ferguson* v. *Crawford*, 70 N. Y. 253 ; *Martin* v. *Gray*, 19 Kan. 558 ; *Pollard* v. *Wegener*, 13 Wis. 569 ; *Butler* v. *State*, 20 Ind. 169.

The law seems to be well settled, that an official return duly made upon process, emanating from the court or its officer, by a sworn officer in relation to facts which it is his legal duty to state in it, is, as between the parties and privies to the suit and others whose rights are necessarily dependent upon it, conclusive of the facts therein stated ; but as to all other persons such return is *prima facie* evidence of such facts, and subject to be disproved whenever it is offered in evidence. But the privity spoken of must be such as would enable the party thus concluded to maintain an action against the officer for a false return to such process. *Philips* v. *Elwell*, 14 Ohio St. 240 ; *Callen* v. *Ellison*, 13 Ohio St. 446 ; *Gray* v. *Gray*, 3 Litt. 465 ; *McConnell* v. *Bowdry's Heirs*, 4 Mon. 399 ; *Costner & Hinckley* v. *Symonds*, 1 Minn. 427 ;

*White River Bank* v. *Downer et al.*, 29 Vt. 332 ; *McCough* v. *Wellington*, 6 Allen 505 ; *Rivard* v. *Garndner*, 39 Ill. 125 ; *Allen* v. *Martin*, 10 Wend. 300 ; *Ayres* v. *Duprey*, 27 Tex. 593.

The above cases arose from attempts to contradict the sheriff's return in other cases than those in which the returns were made ; but the same rule applies to cases in which the process issued and was returned. *Slayton* v. *Chester*, 4 Mass. 478; *Taylor* v. *Lewis*, 2 J. J. Mar. 400; *Trebble* v. *Frame*, 3 Mon. 50 ; *Stinson* v. *Snow*, 10 Me. 263; *Bolles* v. *Bowen*, 45 N. H. 124; *Angell* v. *Bowler*, 3 R. I. 77 ; *State* v. *Clerk of Bergen*, 1 Dutch. 209 ; *Tulis* v. *Branley*, 3 Minn. 277 ; *Egery & Hinckley* v. *Buchanan*, 5 Cal. 53; *Delinger's adm'r* v. *Higgins*, 26 Mo. 180; *Stewart* v. *Stringer*, 41 Mo. 400 ; *Tillman* v. *Davis*, 28 Ga. 495. But we do not mean to decide whether under our statute the return of a sheriff upon process may or may not be contradicted by plea of abatement filed in the suit at the proper time. Where the sheriff makes a false return of process, he is liable, of course, to the party injured, who may proceed against him for such false return.

All the authorities we have examined relate to the return on process, emanating from the court, or the officers of the court. I have found no authority bearing directly upon the question presented here, whether the return of a sheriff, upon a notice to take depositions, given by one of the parties to the other, when, as in our State, he is required by statute to serve such notice, is conclusive between the parties, or may be contradicted.

Judge Moncure in *Barksdale et. al.* v. *Neal*, 16 Gratt. 316, says : "There is a manifest difference between a return on a summons and a return upon a notice. A summons is directed to an officer, and contains a mandate to which his return of 'executed' is a response that the thing commanded has been done. A notice is not directed to any officer, but to the party on whom it is to be served. It contains no mandate, and therefore a return

1879
Special Term.
──────────
Bowyer
v.
Knapp & Miller.

Syllabus 1.

Syllabus 2.

Syllabus 3.

of 'executed' simply is no response, but unmeaning." We think there is a manifest difference between a notice and a summons for the same reasons above stated, and for the additional reason that the one emanates from the court or its officer, and the other from a party or parties to the suit. There is not the same dignity attached to a notice to take depositions that there is to a writ; the same grave consequences could not follow the contradiction of the return of the sheriff to such a notice as to a return upon a writ. The notice to take depositions is but an incident to the suit, while the writ lies at the very foundation of the action; and any invalidity cast upon it might seriously damage the rights of third parties, and unsettle many things that should be regarded as established. We are therefore of opinion that a sheriff's return of service upon a notice to take depositions is *prima facie* evidence of its truth, but may in the case, in which such notice was returned, be contradicted by parol evidence. It would be a hardship, if this was not true. If it could not be done, it might amount to a denial of justice by forcing a party to trial, and reading against him the depositions of witnesses taken without notice to him, and which he was denied the right to cross-examine.

The evidence satisfied the court which heard it, that the return on the notice as to the defendant, O. C. Martin, was not true; and it being the duty of the court to weigh the evidence, we cannot say that it erred in holding it sufficient to contradict the return. It is manifest from the circumstances of this case, that the sheriff did not wilfully make a false return; that it was a mistake made in copying the notice that misled the sheriff. We must therefore hold that the court did not err in suppressing the depositions as to the defendant, O. C. Martin, unless it appear from the record, that the notice actually served upon him was substantially a copy of the original, and was sufficient to notify him when, where and in what suit the depositions were to be taken. No-

tice to take depositions should indicate to the adverse party, with reasonable certainty, when, where, and in what cause the depositions are to be taken. *Gales* v. *Miller et al.* 8 Gratt. 6.

1879
Special Term.

Bowyer
v
Knapp & Miller.

If the notice to the defendant, Martin, was substantially a copy of the of the original, which was a good notice, and indicated to him with reasonable certainty when, where and in what suit they were to be taken, and was not upon its face calculated to mislead him, it should be held to be sufficient. The only variance between the original notice and the purported copy which was served on the defendant, Martin, was, that the original described the suit in which the depositions were to be taken as pending in Greenbrier county, and the so-called copy described the suit as pending in Fayette county, where no suit was pending. When the defendant, Martin, received the notice he took it to his counsel for advice ; and he told him to pay no attention to it. This advice, if wrong, would not avail him ; but the question still recurs : Was the notice he received calculated to mislead him ? We think it was. He could not know that it was a mere mistake, and really referred to the suit pending in Greenbrier county. He could not know that the plaintiff was not trifling with him ; and that his trip to Fayette county to take depositions would not result in nothing. We think the notice served on Martin was fatally defective.

Syllabus 4.

But the court suppressed the depositions as to both defendants. Was this error? The notice and return shows that it was served on both defendants. The defendant, Knapp, does not pretend that he was not served with a true copy of the notice ; and there is no evidence in the record that he was not so served, but *prima facie* evidence in the sheriff's return that he was, which not being contradicted, is conclusive as to him. This was an action on a joint and several bond. Section 19 of chapter 131 of the Code provides that " in an action founded on contract against two or more defendants, although the

Syllabus 5.

plaintiff may be barred as to one or more of them, yet he may have judgment against any other, or others of the defendants against whom he would have been entitled to recover if he had sued them only." ·

The effect of this statute is discussed in the opinion of the court in *Cohen* v. *Guthrie et al. infra* ; and from the reasoning of that opinion, which we approve, under this statute judgment might be rendered against one of two defendants bound in a *joint* and *several* bond, where both had been served with process in the suit. It follows then that it would have been proper to have read the suppressed depositions as to the defendant, Knapp. For if a judgment might have been rendered singly against him in the suit, evidence to show his liability would certainly be admissible, although it was in a deposition which was taken against his co-defendant as well as himself, although it could only be read against the defendant, upon whom notice to take it was duly served. *Logan* v. *State,* 3 Bibb. 230.

We conclude therefore, that the court erred in suppressing the depositions as to the defendant, Knapp, who was duly served with notice to take them, as appears by record.

It is urged that the court erred in refusing to permit the plaintiff to show that Davis, the attorney, was pecuniarily responsible. The bill of exceptions show, that the plaintiff introduced J. Mays, the clerk of the court, who testified that he knew J. W. Davis, plaintiff's attorney in the suit, and that in his dealings with his clients said attorney was prompt and punctual. The plaintiff's attorney then asked the witness to state what was the pecuniary responsibility of Davis, attorney, &c.; and defendants objected, and the court sustained the objection, on the ground that the answer would be irrelevant. The bill of exceptions does not show that the plaintiff excepted to the ruling of the court in refusing to permit the witness to answer the question; and we must presume that the plaintiff acquiesced in the ruling

of the court. We cannot therefore consider whether the court did or did not err, in refusing to permit the said question to be answered.

It is further insisted that the court erred in refusing to permit the deed from Martin and wife to Lowry to be read in evidence, as it is claimed that the deed would have shown to the jury the motive of Martin in renewing the note. It is not set up in any of the various replications to the defendants' second plea, that the defendants, or either of them, represented to the plaintiff that they were solvent, and by thus convincing him that the debt, nor any part thereof would be endangered by the agreement and execution of the new notes, induced him to enter into the agreement, when in truth and fact one of the parties was insolvent. We think the deed was irrelevant and should not have been admitted.

It is alleged as error that the court permitted the depositions of Newman Kincaid, Flanagan, Richards, and Conaway to be read in evidence, because, as is claimed, they were not rebutting evidence. This is an objection to the mere order of the testimony. The bill of exceptions shows that after the introduction of three witnesses the defendants "closed for the present," and then after a number of witnesses had been introduced by the plaintiff, principally on the question of the competency of the plaintiff to transact business, the defendants were permitted to introduce the witness, Kincaid, and others, on the same subject. Whether a plaintiff shall be permitted to introduce further evidence after the defendant's evidence is introduced is a matter within the discretion of the court trying the cause; and its exercise will rarely, if ever, be controlled by an Appellate Court. Clearly he is entitled to introduce evidence to rebut that of defendant. *Brooks v. Wilcox*, 11 Gratt. 572.

The plaintiff in error insists that the court erred in receiving the second plea. The plea in substance is that on the 13th day of April, 1875, an agreement was made

*Margin notes:*
1879.
Special Term.

Bowyer
v.
Knapp & Miller.

Syllabus 6.

Syllabus 7.

1879
Special Term.

Bowyer
v.
Knapp & Miller.

Syllabus 8.

between the plaintiff and defendants, whereby the defendants each executed to the plaintiff his separate note for $825.00, the two notes amounting to the bond sued upon, and that said plaintiff then and there received and accepted and now holds the said two notes of $825.00 each for and in lieu of and in full satisfaction of the bond sued upon.

Whether this plea is good as an accord and satisfaction depends upon the question whether there was any consideration for the agreement therein set up, and therefore whether the said agreement was binding upon the plaintiff. This subject was elaborately considered by the judges of this court, in the case of *Bantz & Co.* v. *Basnett*, 12 W. Va. 772, where two of the judges took the position that if there was an express agreement made between the debtor and creditor whereby the note of the debtor past due was to be surrendered and a new note of the same character, was given by the debtor to the creditor extending the time of payment, such an agreement was founded upon a valid consideration and extinguished the former note and any cause of action thereon. I dissented from this view, holding that such an agreement was a mere *nudum pactum*. But the authorities seem to be uniform, that where there is an express agreement between the creditor and his partnership or joint debtor, whereby the creditor agrees to take and accept the individual note or obligation, of the partner or joint debtor, in discharge of the partnership or joint debt, such agreement is founded upon a valid consideration, and will have the effect to discharge the joint or partnership debt. *Bantz & Co.* v. *Basnett*, 12 W. Va. 772 ; *Sheeky* v. *Manderville*, 6 Cr. 253 ; *Davis* v. *DeSaque*, 5 Whart. 530 ; *Bonnell* v. *Chamberlaine*, 26 Conn. 481 ; *Rayburn* v. *Day,* 27 Ill. 47 ; *Waydell* v. *Luer*, 3 Denio 410; *Thompson* v. *Percival*, 5 B. & A. 925.

In *Thompson* v. *Percival*, Denman C. J. said : It is contended that the acceptance of a bill of exchange by one of two debtors cannot be a good satisfaction, because the

creditor gets nothing which he had not before. The
written security however, which was negotiable and trans-
ferable, is of itself something different from what he had
before ; and many cases may be conceived, in which the
sole liability of one of two debtors may be more benefi-
cial than the joint liability of two, either in respect of
the parties, or the convenience of the remedy, as in cases
of bankruptcy or survivorship, or in various other ways ;
and whether it was actually more beneficial in each par-
ticular case, cannot be made the subject of enquiry."
Such an agreement to be binding must of course be free
from fraud. Whether such an agreement has been made
is a question of fact for the jury to determine.

It seems to follow as a matter of course, that if the
creditor may be held to an agreement made with a part-
nership or joint debtor, by which he agrees to take the
note or obligation of one partner or joint debtor, the
agreement and acceptance would be equally binding, if
it were an agreement to take the individual obligations or
notes of each partner or joint debtor, each for his portion of
the joint debt, and release them as partners or joint debtors.
We think therefore that the plea, showing as it did that the
creditor agreed to release the joint debt by taking the
individual notes of the two joint debtors, each for one-
half of the debt, in full satisfaction of the joint debt, was
a good plea, and showed a defense to the action.

For the foregoing reasons, the instructions asked by
the plaintiff were properly refused, as neither of them
propounded the law correctly. The instruction given
by the court was in accordance with the principles above
announced, and was proper. It was for the jury to find
whether the contract was made as in the plea set forth ;
and also for the jury to say whether it was procured by
fraud, or by taking an undue or fraudulent advantage
of the plaintiff's imbecility, if they believed any such ex-
isted.

It is insisted that the deposition of the plaintiff, as it
was read in argument, ought to be considered as in the

*1879
Special Term.*

*Bowyer
v.
Knapp & Miller.*

record, and be looked to upon the consideration of the motion for a new trial. It is no part of the record, as it is not set out in the bill of exceptions, nor in any other way made a part of the record in the case.

It is urged as error, that the court permitted the counsel for defendants to read from a paper what he called propositions of law contrary, as it is claimed, to the instruction given by 'the court. This question is not raised, as the record does not show that the court made any ruling upon the question, or that there was any exception to the action of the court.

It follows from the error in excluding the depositions as to the defendant, Knapp, that the judgment must be reversed as to both said defendants, with costs to the appellant; and this court proceeding to render such judgment, as the court below should have rendered, on the motion for a new trial, the verdict of the jury is set aside as to both of said defendants, and a new trial awarded the plaintiff, the costs of the former trial to abide the event of the suit; and this case is remanded to the circuit court of Greenbrier county for a new trial to be had therein, and to be further proceeded in according to the principles settled in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.