JOHN WALL, Respondent, v. PATRICK LEE and another, Appellants.

A person disturbing a religious meeting, and interrupting its order and decorum, may be removed therefrom by the application of force sufficient for that purpose.

To justify the application of force for the removal of a person interrupting the order and decorum of such meeting, it is not necessary that the disturbance should be willful.

It seems that, in Catholic meetings, it is appropriate that the priest, as the presiding officer of the meeting, should preserve order and rebuke all violations of it.

S. Hand, for the appellants.

T. R. Strong, for the respondent.

DAVIES, J.    The defendants were sued for a trespass and assault and battery, in attempting to remove the plaintiff from a Catholic church in East Bloomfield, of which the defendant Lee was the pastor or minister.   The facts appearing on the trial were, that the defendant Lee, in his sermon, had commented upon a dance which had been held in the vicinity of the church.   He had made no allusion to the plaintiff or any other person.    Before the services were closed, and while a collection was being taken up, the plaintiff rose in his pew, which he had hired of the defendant Lee, as priest (the title of the church being in the bishop of the diocese), and in a loud voice demanded of the defendant Lee an explanation of his remarks about the dance, and wished to know his author.    Lee told him to sit down, to which plaintiff replied he did not think he ought to.    Lee then told him to sit down or go out.    The plaintiff said he would not sit down or go out.    The defendants then took hold of him and endeavored to pull him out, but the plaintiff resisted, and the effort to remove him was abandoned.

A motion for nonsuit was made and denied, and the defendants excepted.   The jury, under the charge of the judge, found a verdict for plaintiff of $200, and judgment thereon

was affirmed on appeal. The judge, among other things, charged the jury, that in order to justify the removal, or attempt at removal, it must be made to appear that the person so forcibly removed, or attempted to be removed, was guilty of *willfully* disturbing such meeting. This portion of the charge was excepted to by the defendants' counsel, and also several other portions of the charge, not now necessary to advert to.

The learned justice, before whom the action was tried, commenced his charge to the jury by a reference to the provisions of the Revised Statutes of this State (1 R. S., 174), and correctly stated to the jury that the statute had made *willful* disturbance of any assemblage of people for religious worship, by profane discourse, by rude and indecent behavior, or by making a noise within the place of worship, or so near as to disturb the order and solemnity of the meeting, an offense punishable by fine, upon conviction thereof before a magistrate. He also informed the jury, that in every congregation assembled for religious worship, or any other meeting assembled for a lawful purpose, there must necessarily exist the power to preserve order, and to expel and to remove by necessary force any person guilty of a *willful* disturbance of such meeting, who should persist in such disturbance so that it could not be conducted in an orderly and proper manner. This latter proposition was undoubtedly sound, and fully sustained by authority, if the qualification of *willful* had been omitted. That would have been eminently proper if the plaintiff had been on trial for the offense, as declared by the statute ; but a careful examination of the authorities, from which the principle enunciated in the charge is derived, furnishes no warrant for the remark that the disturbance must be *willful* to justify those who seek to remove the offender. If the person is guilty of disturbing the meeting and interrupting its order and decorum, then the application of such force as may be necessary to remove him may be justified. These principles are abundantly sustained by authority. (*Holmes* v. *Bugge*, 18 Law and Eq., 406; *Thomas* v. *Marsh*, 5 Carr. & P., 596; *Hanna* v. *Rust*, 21

Wend., 149; *Collier* v. *Hicks*, 2 B. & Ad., 663; *Brown* v. *Gerdue*, 1 Gray, 182; *Moriarty* v. *Brooks*, 6 C. & P., 684; *Howell* v. *Jackson*, id., 723; *Hibbard* v. *N. Y. and Erie R. R. Co.*, 15 N. Y., 455.)

In the case of *Howell* v. *Jackson*, PARKE, J., told the jury that if a man comes into a public house and conducts himself in a disorderly manner, and the landlord requests him to go out, and he will not, the landlord may turn him out. There was no doubt that a landlord may turn out a person who is making a disturbance in a public house, though such disturbance does not amount to a breach of the peace. To do this the landlord may lay hands on him, and in so doing the landlord is not guilty of any breach of the peace. The ground of justification for the removal of a person who seeks to interrupt or disturb the order and proceedings of others, is that they have the right to the quiet and orderly enjoyment of any lawful business, pleasure or occupation. An intruder has no right to disturb or interrupt, and if he does, it is lawful to remove him and thus restore quiet. In the case of *Holmes* v. *Bugge* (*supra*), Lord CAMPBELL held this right to rest in eleven cricketers who were lawfully playing at cricket, and that when it appeared that a space was tabooed, that no person could properly come there, and that as the plaintiff did come within the tabooed part, and was requested to withdraw and did not, he might lawfully be removed. In the case of *Thomas* v. *Marsh* (*supra*), it was held that the stewards of a musical festival had such possession of the hall where the festival was held, as would justify them in removing an intruder. The plaintiff was making a great noise and disturbance, and Mr. Justice PARKE ruled that the stewards having possession of the hall for the purpose of the festival, must be taken not only to have the use of the rooms but the avenues, for, said he, if they had not a right to keep out improper persons, it would be no use for them to have the hall. The only question, therefore, was, whether the defendants used unnecessary violence in removing the plaintiff, as they had authority to use such force as was necessary to turn him out. *Hanna* v. *Rust* (*supra*), was an action of trespass,

and assault and battery, and the defendant justified the assault on the ground that the plaintiff was making a noise and disturbance in his house, that he was requested to depart, and on his refusal so to do, the defendant laid hands on him gently to remove him.

*Collier* v. *Hicks* (*supra*) was trespass for assaulting the plaintiff, and turning him out of a police office. Two of the defendants were justices of the peace, assembled at the police office, in the transaction of business, and the plaintiff was present, and insisted upon his right to take part in the proceedings as an advocate, and to take notes. The justices directed the other defendants to remove the plaintiff; and for this assault the action was brought. The defendants plead that the plaintiff, in contempt of the justices, and to the disturbance and violation of due order and decency in the administration of justice, and to the hindrance thereof, maintained his right to be present, and to take part in such proceedings; whereupon the defendants, the justices, ordered the other defendants to turn the plaintiff out of the police office, and they, in pursuance of such order, did expel him therefrom into the public street, as they lawfully might. To this plea, there was a general demurrer. The demurrer was overruled, and the defendants were justified in committing the alleged trespass.

In *Brown* v. *Gordon* (*supra*), the judge charged the jury that, if they believed the plaintiff was wrongfully in the passage-way mentioned, and that he refused to leave, after being requested to by the defendant, the latter had a right to remove him, using no more force than was necessary for that purpose.

In *Moriarty* v. *Brooks* (*supra*), it was held that, in an action for an assault, if the defendant plead that he was possessed of a public house, in which the plaintiff was making a disturbance, and that, upon the plaintiff refusing to depart, the defendant was justified in laying hands on him and turning him out.

*Howard* v. *Jackson* (*supra*), held, that if a person conducts himself in a disorderly manner in a public house, and the

landlord requests him to depart, and he refuses to do so, the landlord is justified in laying hands on him to put him out; and if, while the landlord has hold of him to put him out, the person lays hands on the landlord, this is an assault.

In *Hibbard* v. *New York and Erie Railroad Company* (*supra*), this court held, that a railroad corporation was justified in ejecting a passenger from its cars, who refused to conform to a regulation of the company, requiring every passenger to exhibit his ticket to the conductor, when demanded.

It is thus seen, that, in this numerous class of cases, the nonconformity with the rules and regulations prescribed by those who had lawful authority and the right to make them, was held a justification for the removal of the person refusing compliance, and thus creating a disturbance. The fact of disturbance, and refusing to depart upon request, were the essential and only elements necessary to a justification of the trespass and assault. There is not an intimation, in any of these cases, that the disturbance must be *willful;* and no such qualification of the offense has ever been deemed requisite to justify the removal, or attempted removal, of the offender. The precedents of pleas contain no countenance of the idea, that the noise or disturbance, which justifies the *molliter manus imposerit* to turn the offender out, must be willful. (3 Chitty on Pl., 1073–1075.) There was no warrant, therefore, in that part of the charge of the learned justice to the jury, that, to justify the removal, or attempted removal, of the plaintiff, they must be satisfied that he was guilty of a *willful* disturbance of the meeting. If it had been a proceeding to convict the plaintiff under the statute, then this rule of evidence would have been appropriate; and the error of the learned justice consists in the position that the same evidence was requisite to justify a removal, or attempted removal, as would have been required for a conviction under the statute. I think there was, also, error in that part of the charge which instructed the jury that the minister, or priest, had no greater right to use force than any other member of the congregation. In one sense, perhaps, this may be correct, namely, that any other member of the congregation had an

TIFFANY—VOL. VII.    19

equal right with the minister, or priest, to use force in removing a disturber of the peace and order of the meeting. But usage and custom have made it peculiarly the duty of the minister, or priest, to conduct the services of religious meetings, to preside over them, to preserve order therein, and act as the organ or spokesman of the congregation.

The guaranty of the Constitution of the United States of the free exercise of religious opinion, and the rights of the people peaceably to assemble and petition for a redress of grievances, would be but an idle mockery if meetings convened for such purposes can be invaded and disturbed with impunity. Religious meetings would lose all solemnity and usefulness if turned into halls of disputation, and any and every one could call upon the minister for explanation of his sermons, or be permitted to engage in controversy with him pending the services. Such exhibitions would be most unseemly, and convert our churches into arenas for controversy and ill-feeling. It is most appropriate that the minister or priest should preserve order and rebuke all violations of it. As the acknowledged presiding officer of the meeting, it is his duty to check all attempts to interrupt its order, quietness and solemnity, and for this purpose he unquestionably has full power and authority to call upon others to aid him or direct them to remove the offender. In this sense, therefore, he has a greater right to enforce order and use force for that purpose, than any other member of the congregation.

The motion for nonsuit was properly denied, as it was a question of fact for the jury whether any unnecessary violence was used. Force sufficient to remove the plaintiff would have been justifiable, but any excess of force or unnecessary violence could not be justified.

Judgment must be reversed and a new trial ordered, costs to abide the event.

BROWN, J. When the evidence given upon the trial of this action, on both sides, was closed, there was no fact for the jury to pass upon, except, it might be, to assess the plaintiff's

damages, if he was entitled to recover; for the evidence left no fact in controversy between the parties. The witnesses, as well for the defendants as the plaintiff, substantially concurred in their statements; so that the sole question upon the issue formed by the pleadings was presented to the court upon the defendants' motion that the plaintiff be nonsuited. It was the privilege of the defendants to make this motion, and take the judgment of the court upon the right of the plaintiff to a verdict, as well in this form as in any other. The motion distinctly presented the question of the plaintiff's right to maintain the action; and, when it was denied, its effect was, to declare to the jury that, upon the facts sworn to by the witnesses, the plaintiff was entitled to his verdict. His right to such a verdict, I now propose to examine.

The place where the alleged assault and battery was committed, was within a Roman Catholic church edifice, in East Bloomfield, in the county of Ontario. The plaintiff is a member of the congregation worshiping there, and also a pewholder. The defendant, John Gorman, is also a member of the same congregation. The defendant, Patrick Lee, is a Roman Catholic clergyman, and pastor of the church. He rents out the pews, conducts the religious services, and has the exclusive charge of the church edifice, the title to or right of property in which is in the Roman Catholic Bishop, John Timon, of Buffalo. The proof does not show the existence of trustees, vestrymen, or wardens, having a right to control the church and preserve order; and I therefore infer that such officers are unknown to the Roman Catholic organization. On Sunday, the 30th day of August, 1857, there was divine service in the church, conducted, as usual, by the defendant, Patrick Lee. In the course of his sermon he alluded, without naming him, to some member of the congregation, who had young ladies at his house, and drinking and dancing, on Saturday night, which lasted until some time into the morning of Sunday, and that some of the party became intoxicated. These revels and practices the preacher reprehended and condemned, as unworthy practices and pastimes. When the sermon was closed, and before the congregation

was dismissed, the defendant, Patrick Lee, came down from the pulpit, or altar, to take up a collection for an addition to the church edifice. The practice seemed to be, for the pastor to call upon each member of the church in his seat and personally solicit his subscription or contribution. At this time the congregation were seated. The pastor came to the plaintiff's pew, and solicited his contribution. The plaintiff immediately rose from his seat, and, in a voice louder than usual, began to interrogate the defendant in regard to what he had said about the dancing, and that what had been said was false, and demanded the name of the defendant's informer. The defendant requested him to sit down or go out of the church; to which the plaintiff replied, he would not go out for him or any other man, until he got an explanation. The defendant again told him to sit down, and he said he would not. Grogan, one of the witnesses, says that the occurrence attracted the attention of the whole congregation, and he told the plaintiff he would be put out, as he was annoying the congregation. The defendant Lee then took him by the collar of the coat, and attempted to put him out, and failed. He then called for aid to remove the plaintiff from the church, and the defendant Gorman came to his assistance. Both of them took hold of the plaintiff's coat collar and endeavored, by pulling him from the pew, to remove him from the church. The plaintiff resisted, and they were unable to effect their purpose, and so desisted. There was no striking, and the force employed was inadequate to remove him.

This is the whole case upon the evidence. Was the plaintiff's conduct disorderly, and his behavior rude and indecent? "No person shall willfully disturb, interrupt or disquiet any assemblage of people met for religious worship, by profane discourse, by rude and indecent behavior, or by making a noise either within the place of worship, or so near as to disturb the order and solemnity of the meeting." 1 R. S., 673, § 64. One would think there could be no difference of opinion upon the character and tendency of the plaintiff's conduct. That he was the lessee of the pew cannot avail him as a defense, if he violated the decency and order due to

the occasion.   The grant of a pew in perpetuity does not give the owner an absolute right of property.   He has only a qualified interest; the use of the pew for the purpose of sitting therein to hear divine service, and also at meetings of the society held for temporal purposes.   (*Baptist Church in Hartford* v. *Witherell*, 3 Paige, 296.)   He cannot use his pew as a place from which to interrogate the clergyman and fix a quarrel upon him, or in any way interrupt the services, or to impede or interfere with charitable or other collections taken up from the congregation assembled for religious worship.   He is as much bound at these times to preserve order and decorum as a mere stranger or casual hearer.   In the present case the plaintiff claimed and insisted upon his right to rise up from his place, while all others were silent and seated, and interrogate the pastor in a loud voice as to a portion of his sermon, saying what had been said was false or based on information which was false.   When requested to resume his seat or leave the church, he defiantly refused to do either.   I submit that this act was disorderly and subversive of the solemnity and decorum due to the occasion and the place, and that it brought the plaintiff plainly within the meaning of the provision of the statute which I have quoted.   What the plaintiff might lawfully do others might do also, and had others claimed and exercised the same privilege as the plaintiff, the assemblage would have resembled anything else rather than a meeting for religious worship. But more than all this, there is a certain degree of respect and consideration due to the office, if not to the person of a clergyman, essential to his usefulness, which all good men are willing to accord, however widely they may differ with him in opinion upon subjects of religious belief.   This mark of consideration is more especially due to him upon the Sabbath, and within the walls of his own church edifice.   Were such a man exposed to interrogation upon the subject of his teachings, or the words he had uttered as he descends from his pulpit, he would soon lose the consideration due to his office as well as to his person, and his usefulness as a public teacher would be gone forever.   It has been suggested in justification

of the plaintiff that at the time of the occurrence the religious services in the church were closed. This suggestion is not sustained by the evidence. The sermon had ended and the collection was being taken up, but the congregation had not been dismissed. The proof did not show what was the custom in this particular church, but we may venture to take notice, that some of the Protestant churches take up their collection in the middle of the services, some towards the close, but none of them before the benediction or final invocation for the divine blessing. I do not, however, regard the suggestion, if it were true in fact, of any value. The act of disturbance is within the statute, if the assemblage has met for the purposes of religious worship. The religious services need not have been actually in progress. No question was made upon the trial as to the right of the defendants to use sufficient force to remove the plaintiff, provided he was in the act of creating a disturbance. It was peculiarly the province of the defendant, Patrick Lee, to cause his removal, and to claim the aid of other members of the congregation in his effort, for there were no trustees, wardens, vestrymen or other officers to do it, and he opened and closed the church edifice, conducted the religious exercises, and had exclusive control of all that was done. Nor can the degree of force used be open to any dispute. So much as was necessary to remove the plaintiff the defendants undoubtedly had a right to use. The force employed was wholly inadequate to effect that object, for the attempt was abandoned and the plaintiff remained where he was at the time he rose from his seat and commenced the controversy.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All the judges concurring,

Judgment reversed.