The following is the judge’s charge :
Bookstaver, J.
Gentlemen of the jury : The attention which you have given this case will enable you to remember all the facts and circumstances which have been testified to here. . Ton are not to take the remembrance of counsel on either side nor of the court as to what these facts are, but your own recollection of them, and you are to apply the law as-it will be given you by the court to these facts ; because the memory of twelve men is, from the nature of the case, more reliable than the memory of a single man, however mueli he may be interested in remembering. Ton have seen this illustrated during the progress of this case, where the counsel, and in one case the court, erred in regard to the testimony given; therefore, it will be your duty to confer atnong yourselves as to the facts really testified to.
This action is brought to recover damages for an alleged assault and battery. The rules of law applicable to such cases are very simple and cannot be misunderstood. The first is, that no one has a right to put his hand upon another, or hit or assault him without just cause, and if he does he *17 is responsible not only for the actual injury inflicted, but also for the indignity occasioned thereby and should answer for it in damages. The second rule of law applicable to this case is, that every man is entitled to the quiet and peaceable possession of his own house; so zealously does the law protect one in the occupation of his home, that even an officer of the law in the execution of civil process, is not permitted to force himself into a man’s house, except in certain cases, which it is not now necessary to specify. It has often been called his castle, and this he has a right to defend with all necessary force, against intruders who enter or attempt to enter against his will. Where a stranger is invited to enter one’s house he has a right to remain there and to depart at his pleasure, unless before that' time he is notified he is desired to leave, or commanded to depart. If you command a stranger, who has been invited on your premises to leave, he has no more right to remain after that, than if he were never invited by you on your premises, and you have a right to eject him after giving him a reasonable time to leave, using for that purpose no more force than is necessary. Thepe are the principal rules of law applicable to this case; and under the facts shown by the testimony two questions will be presented for your determination. The first is, was the plaintiff or was she not, after the arrival! of the new cook, sometime between eleven and one o’clock,, on the day of the alleged assault, ordered by Mrs. Sewell,, representing her husband, to leave the house % If she was not, then she was lawfully in the house, having been invited there as a servant. If she was, then she was unlawfully •there. The plaintiff, as I understand it, claims she was not ordered to leave. On the other hand the defendant claims she was ordered to leave, and this is testified to by Mrs. Sewell, by her son Mr. Robert Sewell, jr., and by the coachman. If she was ordered at that time to leave the house, and refused to go, she became a trespasser, and was a trespasser at the time Mr. Sewell arrived at home.
This question, gentlemen, is not the main one in the *18 case, but your determination of it will aid you, in arriving at a conclusion on the question of chief importance, and that is : Did Mr. Sewell, the defendant, after sending for the plaintiff, immediately commence to use abusive language toward her and without any warning, violently eject her from his house, causing the injuries «claimed by her ? You have heard the plaintiff’s testimony ,as to what took place. She claims that immediately upon ■her going into the library he began to abuse her, and without any provocation roughly took hold of her, kicked her rand forced her out of the house with so much violence as to •cause her to fall down the front steps. If you believe the -plaintiff’s version of the affair she would be entitled to your verdict.
You have heard the testimony offered by the defendant in regard to the occurrence. He, himself, says that after inquiring into the cause of the disturbance during the day and while he was away from home, and after receiving a defiant answer from the plaintiff, he gave her five minutes to get out of the house, and his account is corroborated by Mrs. Sewell and by the servant, Katie Weldon, whose testimony you will remember.
If you believe the defendant’s version of the occurrence, then he was abundantly justified in using such force as was necessary to remove plaintiff from his dwelling; and the only question which would remain in that case is, Did the defendant use more force than a man of ordinary prudence and caution would have used to accomplish that object ? Because, while one has the right to eject an intruder from his house, and has the same right to remove one who has been invited to enter, after notice to leave, and to accomplish this has the right to use all the force which is necessary to enable him so to do, he is not justified under cover ,of doing what the law says he may to inflict a wanton or .malicious injury upon another.
You will remember the facts as plaintiff has testified to ¿hem. She claims that he took her around the body, held *19 both of her hands and kicked her on the limbs, and also kicked her with his knees on the small of the back, so that from the force used, she fell down the steps. It is claimed, on her behalf, that she is corroborated by the testimony of the laundress, but the latter admits she could not see what really happened, and her testimony is an inference that the plaintiff was thrown off the piazza from the noise she heard. On the other hand, it is claimed on the part of the defendant, that the plaintiff absolutely refused to go and became abusive, that in consequence it become necessary to use force to eject her, and the defendant testified he did use such force, but no more than was necessary. He says that by a sudden movement he got her to the vestibule door; that there were on the inner door two knobs; that she took hold of both, one with each hand, and also clasped the door between her limbs, so that it was necessary to use much force to release her grasp. If she did do that, then the defendant had a right to use whatever force was necessary to cause her to release her hold, and he would not be liable for any injury which occcurred unless, under the circumstances, he took advantage of this necessity to wilfully or wantonly inflict an injury upon the plaintiff. He says that after breaking the hold on the inner door, he had to open the outer vestibule door, it having swung to in the melee; and having done this, he pushed her out on the stoop and left her standing there. Now, in respect to the fact that she was left standing on the piazza, the defendant is corroborated by the coachman, who has testified that he saw her walking down the steps after she was ejected. You will remember the plaintiff testified when she got up she was bleeding; you will also remember her physician, who examined her the next day, testified that the skin was not broken anywhere, and that he discovered no traces of blood. It is for you to determine where such blood came from, if there was any. You will also take into consideration all the other facts and circumstances which have been testified to, and urged by counsel on both sides, and as *20 reasonable .men, without passion or prejudice, apply your best judgment to find out where the truth is.
It is your duty, gentlemen of the jury, to harmonize all the facts in the case if you can. If you find that because of infirmity of memory or from any other cause, any witness has not testified to the exact truth, you are to give due weight to such infirmity. It is better to do that than to conclude at once that any of the parties or witnesses are guilty of perjury; but if you cannot harmonize the testimony by that means, then it is your duty to say which of these parties and which of the witnesses have told the truth.
Some of the matters testified to are beyond the possibility of mere mistake. For instance, whether the plaintiff fell or walked down those steps—she could not have done both. That is a matter about which there must be either a forgetfulness or oblivion of recollection on the part of some of the parties and witnesses, or else some one has wilfully misstated the facts ; and in the latter case it will be for yon to determine which of these parties you will believe, and if you find either has committed perjury it will be your duty to say so fearlessly, by your verdict.
The burden of proof is upon the plaintiff to establish her cause of action, she must convince you by a preponderance of evidence that her version of the matter is correct, dr else you will not be entitled to give a verdict in her favor. By a “ preponderance of evidence,” I don’t mean that she must have more witnesses than the defendant; but that the testimony which has been adduced on her behalf is, in your minds, more convincing and conclusive than the evidence produced by the defendant. But the number of witnesses as to a particular occurrence is, of course, of importance in determining any question of fact, if all are of equal credibility ; because one may be much more easily mistaken than three, if there is a substantial agreement between the three.
And, therefore, in this case you must determine whether the defendant and his witnesses have been guilty of corruption or of wilfull misstatement; or whether the plaintiff *21 alone has been forgetful or been guilty of perjury ; and in determining this you must weigh the motives of the witnesses, their interest in the result and the manner of giving testimony, and the surrounding circumstances.
If you find the plaintiff was ordered out of the house, that she refused to go and that the defendant used no more force than was necessary on his part to compel her to go, then the defendant is entitled to your verdict. If, on the other hand, you find the defendant, under cover of enforcing his rights, wilfully and wantonly or maliciously exercised more or greater force than was necessary, then the plaintiff would be entitled to recover for any damages she may have sustained by reason of the use of that excessive force. The law has regard to infirmities of man; it does not require, under such circumstances as have been developed in this case, that one calculated to an ounce the amount of force necessary to accomplish a particular object. It must be such force as a reasonable man in the exercise of ordinary prudence and care under the circumstances and in the excitement of the moment, would use in accomplishing that purpose. If you find, as I say, that more force or greater force was used than was manifestly necessary to accomplish this purpose, then you will give the plaintiff a verdict for such sum as will be an adequate compensation to her for the pain and indignity suffered by reason of this excessive and wilfull force, and for the loss of time, as well as for the sum spent in medical attendance.
I charge you again, gentlemen, in determining this case, you must lay aside all prejudice and passion, and decide the questions of fact as reasonable men in the exercise of a reasonable judgment.
You are not to award the plaintiff a verdict simply because she is poor and you think the defendant is rich and better able to bear the burden of this litigation, nor because he is a man of position in society. If yon find his version is correct, then he was not only justified in what he did but deserves to be sustained by every good citizen for *22 having the courage to defend this action which cannot but be unpleasant for him. On the other hand if he is wrong and the plaintiff is right in her version, then his position should not shield him from the just consequences of his acts. You are here in the discharge of one of the highest duties men owe to their fellows, or are called upon to perform—to judge the truth between the parties and to measure out justice between them. To do this you must not act from fear or favor, but on the evidence which has been presented to you. Your award of damages, if any, must also' be based upon evidence just as much as any other conclusion to which you arrive. You are not to guess at it; but yon are as reasonable men to determine from the evidence what they shall be, under the rules I have given you.
If you find there was wilful, wanton or malicious injury inflicted by the defendant in ejecting the plaintiff, then, in addition to the elements of damage which I have before enumerated, you will be justified in awarding such punitive damages, as, in your judgment, would be a proper punishment for such wilfulness or malice.
There is one request to charge, which I think I have overlooked. I intended to charge “that in the consideration of this case, the fact of whether or not the plaintiff in this action had wages due her, is not a thing to be considered by the jury,” and, gentlemen, I do so charge you ; that fact has nothing to do with this case whatever : it did' not justify the plaintiff in refusing to leave the defendant’s house on request, if there were wages due her. As well might a tradesman endeavoring to collect a bill, plant himself in your house, and refuse to leave until it was paid. A claim of that kind is a simple breach of contract and can be sued for in a civil action.
Defendants Counsel. I desire that you should charge the jury—perhaps you have, but I did not catch it distinctly— that if they find that Mr. Sewell used no more force than was necessary to overcome the plaintiff’s resistance in removing her from his house, that is, no more force than a man of *23 ordinary prudence would use under the same circumstances for the same purpose, that then their verdict must be for the defendant.
The Court. I have expressly charged that.
Defendants Counsel. Your .Honor’s recollection was that the plaintiff denied the fact that Mrs. Sewell ordered her out of the house. The testimony is the contrary.
The Court. That is another instance of the propriety of submitting the facts to a jury. Anything that I have erroneously stated about the facts, you must correct. If I have made any mistake about facts you must correct me.
Defendants Counsel. Will you permit me to call attention to what she did say ?
The Court. Yes.
Defendants Counsel (reading from a transcript of the testimony). “ Ques. Mrs. Sewell had ordered you to leave the house? Ans. Yes sir. Ques. What did she say ? Ans. She said—she did not tell me to leave the house, but she told me if I did not go she would get a sheriff to put me out. Ques. Did not she order you out of the house ? Ans. Certainly, she did, she told me to go.”
The Court. That escaped my recollection. Then the plaintiff was a trespasser from that time.
The jury rendered a verdict in favor of the defendant.
The court granted an extra allowance of $500.
Note on Right op Householder to Exclude Trespasser.

Who is a Trespasser.

If a person is by license upon the property of another he becomes a trespasser as soon as that license is revoked. Adams v. Freeman, 12 Johns. 408; Wall v. Lee, 34 N. Y. 141; (a case of disturbance of a religious meeting) Hinton v. State, 24 Texas, 454. Adams v. Freeman is said, however, in Dumont v. Smith, 4 Den. 319, to be overruled by Allen v. Crofoot, 5 Wend. 506; and Van Brunt v. Schenck, 13 Johns. 414.
Where certain persons had been allowed to enter upon premises for the purpose of removing certain personal property therefrom, held. that by remaining thereon and asserting a claim thereto, they became trespassers ab initio. Jones v. Mayer, N. Y. Daily. Reg. Aug. 29, 1883.
*24 A refusal to depart upon request is sufficient to justify the owner of premises to forcibly eject the trespasser. 2 Addison on Torts, 693; Harrington v. People, 6 Barb. 607; Scribner v. Beach, 4 Den. 448.
Where an entry, authority or license is given to any one by law and he abuses it, he is a tresspasser ab initio. Moak's Underhill's Torts, p. 366, and cases cited; Cooley on Torts, p. 316; Pollock on Torts, p. 319.
As to when a person is and is not rendered a trespasser ab initio, see Moak's Underhill's Torts, p. 366.
For a further discussion as to when a man’s house is his castle, see 6 Alb. L. J. 379, also 10 Id. 241.

Master and servant, when the servant becomes a trespasser.

' Where the occupation of a house by a servant is connected with the service, the occupation is not as a tenant. Kerrains v. People, 60 N. Y. 221; rev’g l Supm. Ct. (T. & C.) 333. Kerrains v. People, on the distinction between occupancy as servant and as tenant, is examined and applied in Chatard v. O’Donovan, 80 Ind. 20; s. c., 41 Am. R. 782; 21 Am. L. Reg. N. S. 461, 463.
When a master becomes dissatisfied with his servant and gives the servant warning and the latter refuses to depart, the master may turn the servant out and remove his goods, even if the servant has good ■ground of action against the master for breach of contract. Haywood v. Miller, 3 Hill, 90.
A master has the right to order a servant to leave and to use all the necessary force to enforce the order. Hanford v. People, 7 Weekly Dig. 528. [Following Kerrains v. People, above cited.]

The premises.

The courts look upon a house, which is also a home, as peculiarly sacred, but where a house was merely a store-house, and no more force was used than was necessary, the owner was justified in an assault. Corey v. People, 45 Barb. 262.
A “ net-house,” a few yards from the dwelling-house and used as a .sleeping apartment for hired men, has been held to be part of the ■residence and the owner justified in shooting (after warning) an ■intruder. Pond v. People, 8 Mich. 150.

The object.

. Even the service of civil process or an order of the court in a civil ■action does not justify a private person in going upon the premises of the person to be served, contrary tp the will of the latter. Mason v. Libbey, 1 Abb. N. C. 354; setting aside service thus effected.

*25
Who may eject.

The owner of the premises (see cases above cited) or his agent may ■eject. Hanford ®. People, above cited.
A possession in fact must be proved, and that only need be proved, .and can be proved by any witness. Parsons v. Brown, 15 Barb. 590; Moak's Underhill's Torts, p. 368, and cases cited. For criticisms on the case of Parsons v. Brown, see Abbott's Table of Cases Criticised, p. 560.
The priest or minister conducting a religious service, or it seems the presiding officer at any assemblage, may remove by force a disturber of the meeting after request and refusal to depart. People v. Crowley, 23 Hun, 412; Wall v. Lee, [above cited] and cases there cited. So also of the vestry men of a church. Beckett v. Lawrence 7 Abb. Pr. N. S. 403.
See also Penal Code, § 448, providing that, “A person who, with-cut authority of law, wilfully disturbs any assembly ór meeting, not ■unlawful in its character, is guilty of a misdemeanor.”

The refusal to depart.

The refusal to depart may not be absolute and yet the refusal may -be sufficient to authorize a householder or his servant or agent in removing the trespasser. Hanna v. Rust, 21 Wend. 149.
This subject is discussed at some length under an exposition of the maxim “ Domus sub cique est tutissimum refugiam," in Broom's Legal Maxims, 7 ed. p. 432.

When officer executing civil process is not a trespasser.

Where one lets out part of his house, and reserves and occupies an inner room, and, the outer door being open, the officer enters to execute civil process, the inner door is no protection, and the officer is justified in breaking it in to arrest the party. Williams v. Spencer, 5 Johns. 352.
The usual entrance to defendant’s house was the back door, the -front door being commonly fastened; and the sheriff, having entered bythe back door, while it was open in the night, broke open an inner door and arrested the defendant. Held, that the arrest was .legal. Hubbard v. Mace, 17 Johns. 127.
After an arrest arid escape, the officer may break open the outer door of defendant’s house in order to retake him; and where the arrest was in the house and the escape consisted in thrusting him out of it, a demand of admission, etc., upon an immediate return with assistance, is not necessary. Allen v. Martin, 10 Wend. 300, and see Randall’s case, 5 City H. Rec. 141.
*26 If one lives in his store, that is his dwelling-house, the outer door of which may not he broken to make a levy. [Mitchell, J., dissenting].. Welsh v. Wilson, 34 Minn. 92.
The following provisions of the Penal Code and the Code of Criminal Procedure may be found useful in' connection with the foregoing, points :
Use of force or violence, declared not unlawful, etc.
Penal Code, § 228: To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful, in the following cases:
1. When necessarily committed by a public officer in the performance of a legal duty; or by any other person assisting him or acting by his direction.
2. When necessarily committed by any person in arresting one who-has committed a felony, and delivering him to a public officer competent to receive him in custody.
3. When committed either by the party about to be injured or by another person in his aid or defense, in preventing or attempting to-prevent an offense against his person, or a trespass or other unlawful interference with real or personal property in his lawful possession, if the force or'violence used is not more than sufficient to prevent such-offense.
4. When committed by a parent, or the authorized agent of any parent, or by any guardian, master or teacher, in the exercise of a lawful authority to restrain or correct his child, ward, apprentice or scholar, and the force or violence used is reasonable in manner and moderate in degree.
5. When committed by a carrier of passengers, or the authorized, agents or servants of such carrier, or by any person assisting them at their request, in expelling from a carriage, railway car, vessel or other vehicle, a passenger who refuses to obey a lawful and reasonable regulation prescribed for the conduct of passengers, if such vehicle has first been stopped and the force or violence used is not more than sufficient, to expel the offending passenger, with a reasonable regard for his personal safety.
6. When committed by any person in preventing an idiot, lunatic,, insane person, or other person of unsound mind, including persons temporarily or partially deprived of reason, from committing an act dangerous to himself or to another, or in enforcing such restraint as is necessary for the protection of his person, or for his restoration to-health, during such period only as shall be necessary to obtain legal authority for the restraint or custody of his person.

*27
Officer malting criminal arrest.

Code of Criminal Procedure, § 175: The officer may break open an outer or inner door or window of any building, to execute the warrant, if, after notice of his authority and purpose, he be refused admittance. [As to so doing at night or Sunday, in cases of misdemeanor, see Murphy v. Kron, 20 Abb. N. C. 259].
Code Criminal Procedure, § 176 : An officer may break open an outer or inner door or window of any building, for the purpose of liberating a person who, having entered for the purpose of making an arrest, is detained therein, or when necessary for his own liberation.
Code of Criminal Procedure, § 178: To make an arrest, as provided in the last section [§ 177, provides for arrest without warrant], the officer may break open an outer or inner door or window of a building, if, after notice of his office and purpose, he be refused admittance.
Code of Criminal Procedure, § 187: To retake the person escaping or rescued, the person pursuing may, after notice of his intention and refusal of admittance, break open an outer or inner door or window of a building.