# CHARLESTON.

## STALNAKER v. JANES.

Submitted September 9, 1909. Decided November 15, 1910.

1. STOCK—*Warranty—Rescission—Grounds.*

   An expression of opinion by the seller of shares of non-dividend bearing stock in a mining corporation, as to what

dividends it will pay and the time of payment thereof, accompanied by the general and indefinite statement that he had "inside information", does not constitute a warranty, nor ground for rescission of the contract on the failure of the corporation to pay dividends on the stock within the time specified.

2.  SALES — *Recission* — *Grounds* — *Misrepresentation of Fact Not Relied Upon.*

    A misrepresentation of fact, made in the negotiation of a sale of personal property, not relied upon by the purchaser, constitutes no ground for rescission.

3.  DEPOSITIONS—*Sufficiency*—*Refusal of Witness to Answer Questions of Doubtful Relevancy and Materiality.*

    The deposition of a party to a cause, examined as a witness, cannot be rejected merely because of his refusal to answer questions, the relevancy and materiality of the subject matter of which are doubtful, when no process to compel him to answer the same has been taken or applied for. By submitting his cause, without having so tested the propriety of the questions, the opposite party waives the failure of duty on the part of the witness, if any there was.

4.  APPEAL AND ERROR—*Assignments of Error*—*Presumption*—*Sufficiency of Notice of Taking Depositions.*

    An assignment of error, founded upon the overruling of an objection to the reading of a deposition on the ground of insufficiency of the notice in respect to the time and place of the taking of the same, which objection admits notice thereof and is also opposed by record evidence thereof, is untenable in the absence of proof of uncertainty in respect to the time and place, shown by production of a copy of the notice or otherwise, it being presumed that its terms were reasonably certain.

Appeal from Circuit Court, Barbour County.

Action by Albert A. Stalnaker against William Janes. Judgment for defendant, and plaintiff appeals.

*Affirmed.*

*Wm. T. George,* and *J. Blackburn Ware,* for appellant.

*Fred O. Blue,* for appellee.

POFFENBARGER, JUDGE:

Albert A. Stalnaker complains of a decree of the circuit court of Barbour county, dismissing his bill, praying rescission of a contract of sale of shares of stock in a mining corporation,

made to him by William Janes, the defendant, and a decree for the sum of $1,500.00, the amount paid for said shares.

This relief is sought on the ground of fraud, and certain facts are set forth which, it is urged, make out a case of rescission on that ground. These are substantially as follows: Under an option, given to Janes, plaintiff had sold the coal under his land for $2,400.00. As soon as he came into possession of this money, Janes induced him to buy ten shares of the capital stock in a corporation, known as the Chesterfield Heights Corporation, for $1,000.00, by making extravagant and unreasonable statements, concerning its value. This transaction having been completed, Janes induced him to take 5,000 shares of the capital stock of the Ures Consolidated Mining Company, whose principal office was in the city of Chicago and its mines in the Republic of Mexico. In effecting this sale, Janes represented that certain other persons were interested with him in the sales of the stock, under an agreement that none should be sold for less than 33 and 1-3 cents per share, but, out of alleged friendship and personal regard for the plaintiff, he offered it to him for 30 cents per share, and took his check at the higher rate of 33 and 1-3 cents and then refunded the difference of $166.66. In this connection, he professed great friendship for the plaintiff, on which ground he justified himself in deceiving his associates and selling exactly at cost, at the same time representing himself to be in possession of "inside information" concerning the value of the stock. Upon information and belief, it is alleged that the Ures Consolidated stock, sold by Janes and his associates in Barbour county, had been purchased by one Hawes at the rate of four cents per share, and he sold it to Janes and others at a small advance. Plaintiff bought his stock sometime in the year 1904, and brought this suit in 1906. All allegations of fraud and misrepresentation are denied in the answer. The answer also denies that the respondent sought the plaintiff and asked him to buy the stock and avers, on the contrary, that plaintiff sought him and offered to buy stock. He also denies having represented the stock to have cost 30 cents per share. It is also denied that this stock was procured from Hawes. It also sets up by way of estoppel a confirmation of the contract by a refusal on the part of the plaintiff to sell the stock back

to the defendant at the price paid therefor. It is said an allegation to the effect that the defendant was engaged in the business of making fraudulent sales of corporate stocks in said county is not denied, but this statement is erroneous. It is denied.

Authority is invoked for the proposition that a false representation that a sale of corporate stocks is made at cost is ground for rescission, but the defendant swears the cost of the stock was never mentioned in the negotiations for sale, and there is nothing in the record that can be regarded as decisively settling the question of veracity between these two men. This is also true of the alleged representation as to personal knowledge of the company's affairs or the value of its mines. Janes denies having made it. "Inside information" is a very indefinite expression anyhow, not necessarily signifying knowledge of specific facts. It is not pretended that Janes represented himself as having seen or inspected the company's mines or gone over its books. Both of these parties resided in Barbour county and each probably knew the other had no personal knowledge of the condition or value of the mines. Another alleged representation upon which the plaintiff says he relied is that the stock would pay a dividend in six months. As Janes was then a stockholder, it is insisted, upon the authority of *Grim et al* v. *Byrd,* 32 Grat. 293, that failure of such an assurance or prediction by him constitutes fraud. That case wholly fails to sustain this proposition. The expression of opinion in it was accompanied by many false representations, concerning specific material facts, bearing on the question of the value of the stocks, such as the indebtedness of the company and its earnings for past years. These false representations were made to induce belief that the stock would pay dividends within the time specified. Being false, it followed that the expression of the opinion itself was known to be a falsehood. We have nothing of that kind here. If Janes said what is imputed to him, concerning dividends, it was a mere expression of opinion, unaccompanied by any false statement about the resources or liabilities of the company.

An effort is made to prove the defendant and others guilty of having carried on a sort of conspiracy to defraud the farmers of Barbour county by selling them worthless corporate stocks,

and several companies in which they sold shares are mentioned. But there is no proof that these sales were·fraudulent. For all that appears, these companies had a *bona fide* existence and were not in any sense fictitious. That they fell short of the expectations of the stockholders in their results, is no evidence of fraud. There were expressions of opinion as to the value of these stocks and the probability of dividends, but no mis-representations as to specific facts. While Janes was negotiating a sale of some of the stock of the Chesterfield Heights Company, S. A. Moore came into the room, holding in his hand what appeared to be a telegram and saying it was an order to sell no more of that stock, because some person, not named, desired all of it; and Janes thereupon vigorously declared the gentle-men he was then negotiating with were his friends to whom he had promised the stock and they should have it. On the advice of his counsel, Janes declined to either affirm or deny this transaction, when a question, relating to it, was propounded to him. Taking this circumstance as proven, there is no evi-dence that Moore did not have just such·a telegram as he said he had, or that, if he did, it was not genuine. Nor did this transaction have any connection with the one between the plain-tiff and Janes. He was not a party to it. A similar fraud, perpetrated upon other persons about the same time, in respect to sales of property, is evidence of fraud between the parties to a particular sale, alleged to be fraudulent, but it must be shown to be fraudulent. No fraudulent sale to anybody has been shown by the evidence.

That no guaranty of dividends in six months was relied upon or considered as the main inducement to the investment, is shown by the conduct of complainant himself. He gave his check for the stock September 17, 1904. This check was not cashed until January 13, 1905, about four months later. Had he been dissatisfied, he could have ordered the bank not to pay the check, and thus kept the money in his own hands, while litigating the question of fraud. In January or February, 1906, he bought an additional 100 shares of the same stock from another man at 60 cents. This occurred more than a year after the first purchase and no dividends had ever been seen ·or suggested as a reality. A plain inference of non-reliance upon such a guaranty or expectation arises from it.

In February, 1906, Janes took back complainant's Chesterfield Heights shares at one-half what he said he paid for them and offered to take back the mining stock at what he had received for it, but complainant refused to let him have it, asking a profit of $500.00 on the re-sale. He says he was induced to hold it by representations of confederates of Janes to the effect that a rescission would be a great sacrifice. Janes swears his offer was made in good faith. A representative of the company was then selling the same stock at 60 cents per share and complainant bought some of him at that price. Hence it is quite probable that the latter determined the question of value for himself. If these people did insist upon his retention of the stock, he proves no misrepresentations as to material facts made to induce him to decline the offer. The maps, pictures and other things, relating to the mine and its products, exhibited or exposed to induce belief in the value of the stock, are not shown to have been fictitious or false in any respect. The disappointment arises solely from the failure of the enterprise. At the time of the rejection of the offer of re-purchase, Stalnaker knew as much about the character of the representations made to him, in the negotiations of the sale of stock, as he knows now, and, thus informed, he elected to keep it. This works an estoppel. *Hutton* v. *Dewing,* 42 W. Va. 691.

A relation of confidence, placing the parties on an unequal footing, and casting upon the defendant the burden of showing good faith on his part, in the transaction, is said to arise out of the facts that the latter was an attorney at law and a holder of stock in the company and gave assurances of personal friendship in the course of the negotiation of the sale; but no authority is cited for the proposition and we are not aware of any. Such a relation generally rests upon some contractual obligation, duty or right, not a mere difference between the parties in respect to capacity or ability, natural or acquired. The addition of mere assurances of personal friendship is wholly insufficient to convert this difference in business capacity into a confidential relation. The complainant was not under the control of the defendant in respect to his person or property. The latter was in no sense his trustee and he was under no disability of any kind. There is no suggestion of mental incompetency on his part or of undue influence on the part of

the defendant. That the latter was a stockholder of the corporation was a fact wholly foreign to the transaction between the parties and independent of it. They dealt with each other at arms length and the only inquiry is whether the purchase was induced by false representations as to material facts. From that point of view, we have analyzed and discussed the evidence and are of the opinion that none have been established.

To sustain his defense, Janes filed the depositions of himself and Floyd Davis, the company's mining engineer, residing in the state of Iowa. Objection to the reading of each of these was made. The exception to the former was based upon the refusal of the witness to disclose the names of persons to whom he had sold shares of stock in corporations in Barbour county, other than the complainant and affirm or deny certain alleged incidents of the negotiation of certain sales, known to have been made. On the refusal of the witness to answer the last of these questions, the complainant gave notice of his intention to object to the reading of the deposition and refused to cross-examine him further. The deposition of Davis was objected to on account of alleged insufficiency of the notice to take the same, in respect to time and place and the name of the notary. The deposition was taken April 9, 1908, in Des Moines, Iowa, the place of residence of the witness. No notice appears in the record, but it shows a copy of the interrogatories propounded was delivered to the attorney for the complainant on April 3, 1908, which allowed ample time for consultation between the attorney and his client and the making of the trip to Des Moines. The exceptions admit notice of time and place, but deny its sufficiency, and the caption says the deposition was taken pursuant to notice. The letter of instructions to the notary public refers to a notice to take depositions at the office of Dr. Floyd Davis, Iowa Loan & Trust Building, City of Des Moines, on the 9th day of April, 1908, as being enclosed therewith, and the deposition was taken at the office of Davis.

The exception to the deposition of Janes was properly overruled. He did not arbitrarily refuse to answer any questions. As the questions related to transactions between him and persons other than the complainant and in which he was not concerned, the witness had the right to take the opinion of the court upon the question of their relevancy and materiality,

and the remedy of the complainant, if he desired the answers, was an application to the court for process to obtain them. Any other rule on this subject would enable one party to take the other by surprise. It being easily practicable to have such questions settled before submission, that should be done in the interest of fairness and justice. Courts of equity above all others should abstain from the establishment of rules likely to work surprise, hardship and injustice. By submitting his cause without having tested the propriety of the questions and relevancy and materiality of the subject matter thereof, the complainant waived the failure of duty on the part of the witness, if any there was. *Fels* v. *Raymond,* 139 Mass. 100; *Cooper* v. *Central Railroad,* 44 Ia. 134; *McNamara* v. *Ellis,* 14 Ind. 516.

None of the recitals of the record, concerning notice of the taking of the deposition of Davis are in any way contradicted or disputed. They prove specification of time and place but not the manner thereof. If there was any ambiguity or indefiniteness, respecting either, it is not disclosed. Admitting there was such notice, and denying only its sufficiency, the complainant should have' caused a copy thereof to be brought up as a part of the transcript, to enable the court to see whether its terms were misleading. The facts disclosed by the record, as it appears here, cast upon him the burden of producing the notice itself or some other evidence to prove its insufficiency. Though not there stated in terms, this principle was observed in *Bowyer* v. *Knapp et als,* 15 W. Va. 277. The sheriff had given the party a misleading copy of the notice. This copy was introduced to show its terms and character. Notice being admitted and only its sufficiency questioned, the presumption is that its terms were reasonably certain and nothing more is required. Our statute, unlike those of some other states, requires only reasonable notice of the time and place of the taking of depositions, section 35, chapter 130, Code of 1906. It does not require specification or disclosure of the name of the officer before whom a deposition is to be taken. We are, therefore, of the opinion that the exception to the deposition of Davis was properly overruled.

Upon the principles and conclusions, above stated, the decree will be affirmed.

*Affirmed.*